IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FRANCISCO JAVIER RIVERA AGREDANO and ALFONSO CALDERON LEON, | ) | |
| Plaintiffs, | ) | No. 05–608C |
| v. | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACTS

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims, defendant, the United States, submits the following response to plaintiff's proposed findings of uncontroverted facts.[1]

8. RIVERA and CALDERON LEON are citizens of the Country of Mexico and authorized to enter the United States to conduct business. [Cmp. para. 2-3] Jose Armando Jimenez Coronel purchased and thereafter imported a 1987 Nissan Pathfinder VIN:JN8HD16Y7HW029972 (hereinafter SUBJECT VEHICLE) into Mexico on December 12, 2000. On or about January *25,* 2001, Mr. Jimenez was arrested and the SUBJECT VEHICLE was seized by USA under 18USC545; 21USC952; and 19CFR162.45(A)(for transportation of marijuana across the United States border.) [See; Declaration of Francisco Javier Rivera Agredano, P1. App. 9, and Alfonso Calderon, P1. App. 10.; Cmp. para 10-11]

[1] Defendant follows plaintiffs' convention in numbering paragraphs.

**Response:** Agree in part and disagree in part. Disagree with the statements contained in the first two sentences of plaintiff's proposed fact number 8 for lack of information sufficient to form a belief as to their accuracy. Agree with the statement contained in the third sentence of plaintiff's proposed fact number 8 that the Government seized a 1987 Nissan Pathfinder (the "subject vehicle") on January 25, 2001.

9. On January 30, 2001, Mr. Jimenez pled guilty to violation of California Health and Safety Code C2A711359 and admitted that he "knowingly possessed 59 pounds of marijuana for purposes of sale." [Cmp. para. 12] On February 20,2001, Mr. Jimenez was granted probation for three (3) years, sentenced to time served (39 days) and ordered to pay $400.00 in fines and restitution. In exchange, the balance of the charges against him were dismissed. [See; Declaration of Francisco Javier Rivera Agredano, P1. App. 9, and Alfonso Calderon, P1. App. 10; Cmp. para 13]

**Response:** Agree in part and disagree in part. Agree that the driver of the subject vehicle pled guilty to importing marijuana into the United States. Disagree with the additional statements contained in plaintiff's proposed fact number 9 for lack of information sufficient to form a belief as to their accuracy.

10. Thereafter the SUBJECT VEHICLE was made available for sale to the public through a Federal Forfeiture Sale. On September 5, 2001, RIVERA acquired the SUBJECT VEHICLE from the Department of Treasury in a Public Auction following a Customs Service Department Federal Forfeiture Sale. [See; Declaration of Francisco Javier Rivera Agredano, P1. App. 9, and Alfonso Calderon, P1. App. 10; Cmp. para. 15]

**Response:** Agree in part and disagree in part. Agree that the Government hired EG&G, Inc. ("EG&G") to direct and organize a forfeiture sale of the subject vehicle. Def. App 6-14. McCormack Auction Company ("McCormack") conducted the auction of the subject vehicle. Def. App. 15, 16. Agree that on September 5, 2001, Mr. Rivera purchased the subject vehicle at auction for $2,600. Def. App. 18.

11. On Thursday, January 24, 2002 RIVERA was traveling in the SUBJECT VEHICLE from the City of Ensenada, Baja California to the City of Tijuana, Baja California. RIVERA was accompanied by CALDERON. RIVERA and CALDERON were stopped at a Highway Check Point at the location known as El Sauzal, Ensenada, Baja California by Mexican authorities. [Cmp para. 16] The SUBJECT VEHICLE was searched. The Mexican authorities discovered twenty two (22) packages containing marijuana (weighing 17 kilograms total.) The packages were between the upholstery walls and the body of the vehicle (the wheel well.) [See; Declaration of

Francisco Javier Rivera Agredano, P1. App. 9, and Alfonso Calderon, P1. App. 10 Cmp. para. 17]

**Response:** Agree.

12. RIVERA and CALDERON were arrested and were in Federal Prison in Mexico from and after January 24, 2002 [Declaration of Francisco Javier Rivera Agredano, P1. App. 9, and Alfonso Calderon, P1. App. 10; Cmp. para. 18] until their release on January 10, 2003 (upon a finding of innocence).

**Response:** Agree that Mexican authorities arrested Messrs. Rivera and Calderon at a highway checkpoint on January 24, 2002 and released them on January 10, 2003.

13. Jose Blanco Loya, an expert witness from the Office of the Attorney General (in Mexico), tested the marijuana on January 25, 2002. On February 13, 2002, Mr. Blanco testified before the 11th Federal District Court of Ensenada that the marijuana found by the Mexican authorities on January 24,2002 was "highly dehydrated, consistency and texture had been lost, and due to color lost, it had a 'brownie' color trend .... change in texture and consistency is also due to they (sic) have been stored or exposed to certain physical or atmospherical conditions, change in color is due to an old or stored marijuana ...." [Declaration of Carlos Mejia, P1. App. 11; Cmp. para. 19]

**Response:** Disagree with plaintiff's proposed fact number 13 for lack of information sufficient to form a belief as to its accuracy.

14. On March 11, 2002, expert chemists Rafael Garcia Guterrez and Miguel Carrillo Mendivil, qualified as experts in the Federal Court, testified as follows: "(the marijuana) is highly dehydrated, it has a brownie color ... it is observable that is marijuana that has been stored for a long time and not only that, at opening a 'rotten' odor comes from the packages .... it is assumed that such illegal drug was exposed to adverse atmospherical and physical conditions for a long time." [Declaration of Carlos Mejia, P1. App. 11; Cmp. para. 20]

**Response:** Disagree with plaintiff's proposed fact number 14 for lack of information sufficient to form a belief as to its accuracy.

15. Thereafter, in a response to a Freedom of Information Act request filed by plaintiffs' counsel, photographs were produced by CUSTOMS showing that the area wherein the Mexican officials discovered the marijuana in January of 2002 had not been searched by USA prior to the sale to RIVERA. [Cmp. para. 21] [see; Declaration of Carlos Mejia, P1. App. 11; also, Declaration of Francisco Rivera, P1. App. 9 and Declaration of Alfonso Calderon, P1. App. 10]

**Response:** Disagree with plaintiff’s proposed fact number 15 for lack of information sufficient to form a belief as to its accuracy.

16. The area wherein the Mexican officials discovered the marijuana in July of 2003 had not been properly searched by CUSTOMS, MCCORMACK, or EG&G, INC. despite a duty to do so. If the vehicle had been properly searched prior to the sale to plaintiffs, the marijuana (in excess of 33 pounds) would have been detected. The failure to conduct a thorough search of the vehicle prior to sale was the result of an USA policy to curtail searches in order to avoid causing damage to seized vehicles during customs’ inspections. The goal of curtailing the searches was to maximize the resale value of the vehicle at auction. [Deposition of Jayson Ahern (6-4-04) pg. 50; ll 20-25; pg. 51, ll 1-11; Pl. App. 1; Deposition of Robert Root (6-24-04) pg. 30; ll 2-8; Pl. App. 2; Deposition of David Murphy (6-24-04) pg. 9; ll 25; pg. 10; ll 1-5; Pl. App. 3; Deposition of David Murphy (6-24-04) pg. 43; ll 21-25; pg. 44 ll 1-18; P1. App. 3; Deposition of Officer Joseph Marilao (6-9-04) pg. 26; ll 22-25 and pg. 27; ll 1-4; P1. App. 4; Deposition of Robert Bickers (6-9-04) pg. 6; ll 21-22; Pl. App. 5; Deposition of Robert Bickers (6-9-04) pg. 8; ll 10-12; P1. App. 5; Deposition of Robert Bickers (6-9-04) pg. 26; ll 3-17; P1. App. 5; Declaration of Teresa Trucchi]

**Response**: Disagree. Neither the Government, EG&G, Inc., nor McCormick Auction Company owed any contractual duty to plaintiffs regarding inspecting the subject vehicle. Government personnel inspect seized vehicles prior to public auctions consistent with applicable statutes, regulation, and policies. Disagree that the Government had a policy to "curtail" searches or that the deposition transcripts plaintiffs cite support such an inference.

17. There is another similar case pending in this court in front of the Honorable Judge Hewitt. The complaint in Rivera, Calderon v. USA (United States Court of Federal Claims Number 05-608C)] [see; also, Declaration of Ali Jazmin Rodriguez, P1. App. 7 and Declaration of Adrian Rodriguez, P1. App. 8] which alleges as follows:

**Response:** Agree in part and disagree in part. Agree that this case is captioned as Rivera v. United States, Fed Cl. No. 608C. Agree that Rodriguez et al. v. United States, Fed. Cl. No. 05-370C (Judge Lettow), is currently pending before this Court.

18. Ali Jazmin Rodriguez and Adrian Rodriguez (husband and wife) purchased a Volkswagen Passat at an auction conducted by EG&G/McCormick for the Department of Homeland Security of the UNITED STATES OF AMERICA [Complaint, paragraph 16 and

Declaration of Ali Jazmin Rodriguez, Pl. App. 7, and Adrian Rodriguez, P1. App. 8.].

**Response:** Agree in part and disagree in part. Agree that Ali Jazmin Rodriguez allegedly purchased a Volkswagen Passat at an auction conducted on behalf of the United States on March 5, 2003. Disagree with any implication that Adrian Rodriguez was a party to that transaction. Disagree with any implication that the facts of this unrelated lawsuit are material to defendant's motion to dismiss or, in the alternative, for summary judgment.

19. On July 17, 2003, Adrian Rodriguez took the vehicle to a mechanic in Tijuana because it was making an unusual sound. The vehicle was found to have 33 pounds of marijuana in a box on the underside of the body. Upon discovery of the marijuana, Adrian Rodriguez asked the mechanic to call the police. The Tijuana police arrived and Adrian Rodriguez was arrested. [Complaint, paragraph 17-18 and Declaration of Ali Jazmin Rodriguez, Pl. App. 7, and Adrian Rodriguez, P1. App. 8.] Adrian Rodriguez was in Federal Prison in Mexico from and after July 17, 2003 until August 15, 2003 when he was released. [Complaint, paragraph 17-22 and Declaration of Ali Jazmin Rodriguez, Pl. App. 7, and Adrian Rodriguez, P1. App. 8.]

**Response**: Disagree with plaintiff's proposed fact No. 19 for lack of information sufficient to form a belief as to its accuracy. Disagree with any implication that the facts of this unrelated lawsuit are material to defendant's motion to dismiss or, in the alternative, for summary judgment.

20. Seller USA is required under its policies and procedures to search any automobile when there is probable cause to suspect narcotics to be hidden within the vehicle. The USA's search of the automobile was "significantly substandard and incomplete." [Dec of Trucchio, P1. App. 6; Report of expert Michael Levine]

**Response:** Disagree. Consistent with applicable statutes, regulations, and policies, Government personnel conduct inspections of seized vehicles prior to forfeiture sales such as the one at issue in this case. The Government owed no duty to inspect to plaintiffs pursuant to any contract or money mandating provision of law. Disagree with any implication that it is proper for plaintiffs' counsel to proffer evidence regarding this point.

21. Plaintiffs believed, at the time of the sale, that the vehicle was the product of a seizure at the border. Plaintiffs believed, at the time of the sale, that the fact that the vehicle had been seized by USA Customs, that USA Customs had searched the vehicle as part of the seizure and before releasing the vehicle

for sale to them. Plaintiffs were unaware that the search of the vehicle had been limited to increase the resale value of the same and would not have entered into the transaction with the USA if they had known of the limitations to the seizure search for the purpose of increasing USA's profit in the subsequent commercial transaction. [Declaration of Francisco Rivera, Pl. App. 9, and Alfonso Calderon, P1. App. 10.]

**Response:** Disagree with plaintiffs' statements regarding their beliefs for lack of information sufficient to form a belief as to their accuracy. Disagree with any implication that Government personnel curtailed any inspection in this case or altered inspection policies in order to obtain a "profit," or that plaintiffs have identified any probative evidence to support their contention.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ PATRICIA M. McCARTHY
PATRICIA M. McCARTHY
Assistant Director

s/ PAUL R. WELLONS
PAUL R. WELLONS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-8253
Fax: (202) 307-0972

December 2, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on December 2, 2005, a copy of the foregoing “DEFENDANT’S RESPONSE TO PLAINTIFF’S PROPOSED FINDINGS OF UNCONTROVERTED FACTS” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ PAUL R. WELLONS