# In the United States Court of Federal Claims

No. 05-608 C
E-Filed: March 27, 2006

| | | |
|---|---|---|
| FRANCISCO JAVIER RIVERA AGREDANO and ALFONSO CALDERON LEON, Plaintiffs, v. THE UNITED STATES, Defendant. | ) | Motion to Dismiss for Lack of Jurisdiction; RCFC 56; Search of Impounded Vehicle for Resale; Breach of Contract; "As Is" Clause; Breach of Implied Covenant of Good Faith and Fair Dealing; Whether Failure Adequately to Search Vehicle Constitutes Breach of Contract; Damages Available for Breach; Third-Party Beneficiary |

Teresa Trucchi, San Diego, CA, for plaintiffs.

Paul R. Wellons, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant.

## OPINION

HEWITT, Judge

Plaintiffs present themselves in their complaint as an unwitting purchaser and passenger of a vehicle that contained seventeen kilograms of marijuana hidden beneath upholstery. The vehicle was purchased at a Federal Forfeiture auction. The vehicle had been confiscated by the Customs Service in connection with an arrest. Plaintiffs allege that they spent a year in a Mexican prison following discovery of the marijuana by Mexican authorities at a Mexican checkpoint. Plaintiffs state that they are innocent of the crime of possession of marijuana and seek to recover compensation for damages sustained as a result of defendant's alleged failure to conduct a thorough search of the

vehicle prior to sale. Plaintiffs allege that defendant purposely failed to conduct a thorough search of the vehicle in order to increase the resale value of the car at auction.[1]

I. Background

Plaintiff Francisco Javier Rivera Agredano (Rivera) bought a 1987 Nissan Pathfinder, Vehicle Identification Number JN8HD16Y7HW029972 (vehicle), from the Department of the Treasury in a public auction following a Customs Service Federal Forfeiture Sale on September 5, 2001.[2] Compl. ¶¶ 7, 13; Defendant's Proposed Findings of Uncontroverted Fact (Def.'s Facts) ¶¶ 1-2; Plaintiffs Francisco Javier Rivera Agredano and Alfonso Calderon Leon's Response to Statement of Uncontroverted Facts in Opposition to Defendant USA's Motion to Dismiss or, in the Alternative, for Summary Judgment (Pls.' Facts) ¶¶ 8, 10. The brochure advertising the sale stated,

> The vehicles offered to you for purchase at any U.S. Customs Auction are sold "AS IS, WHERE IS". This means that neither U.S. Customs [n]or McCormack Auction Company[] [n]or EG & G Dynatrend[] extend any warranties or promises of any kind regarding any aspect of the vehicle or its ability to operate, including but not limited to the vehicle's identity, previous ownership, physical condition, registration status, or ability to pass a smog certification.

---

[1]The circumstances alleged in this case appear substantially similar to those addressed in Rodriguez v. United States, 69 Fed. Cl. 487 (2006). The court has found the analysis in Rodriguez helpful in addressing the similar issues in this case.

[2]The Declaration of Alfonso Calderon Leon in Opposition to Defendant USA's Motion to Dismiss or, in the Alternative, for Summary Judgment (Calderon Decl. or Declaration) states that plaintiffs–in addition to being brothers-in-law–are business partners and appears to suggest that plaintiffs may jointly own the vehicle because they are business partners and the vehicle was bought for use in their printing business. Declaration of Alfonso Calderon Leon in Opposition to Defendant USA's Motion to Dismiss or, in the Alternative, for Summary Judgment (Calderon Decl.) ¶ 3 ("We bought the vehicle to use in our printing business.") (emphasis added); cf. id. ¶ 11 ("If I had known [that the searches of the vehicles were being limited], I would never have agreed that [plaintiff Rivera] should purchase this vehicle for our printing business . . . . I agreed to the transaction . . . .") (emphasis added). The evidence in the record shows Mr. Rivera as sole purchaser and owner of the vehicle. Appendix to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Def.'s Mot. App.) at 18 (Certificate of Title). Moreover, plaintiffs do not assert in their complaint or argue in their briefing that plaintiff Alfonso Calderon Leon (Calderon) took title to the vehicle and for that reason is in privity of contract with the United States. The court therefore disregards Mr. Calderon's declaration because, without more, it is insufficient to show that Mr. Calderon was a purchaser of the vehicle in privity of contract with the United States.

Appendix to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Def.'s Mot. App.) at 16. As a condition of participating in the auction, Rivera signed a bidder registration form, which provided, "I agree to comply with the terms of sale contained in the sale catalog for this sale and all future sales I attend." Id. at 17. The sale catalog states in pertinent part: "WARRANTY/GUARANTEE: All merchandise is sold on an 'AS IS, WHERE IS' basis, without warranty or guarantee as to condition, fitness to use, or merchantability stated, implied or otherwise. Please bid from your personal observations." Def.'s Mot. App. at 15 ("as is" clause or "as is" provision). Rivera and plaintiff Alfonso Calderon Leon (Calderon) (collectively, plaintiffs) claim that they were unaware of the "as is" provision at the time of sale.[3] Pls.' Facts ¶ 3. The car had previously belonged to Jose Armando Jimenez Coronel (Jimenez) but was seized by defendant when Jimenez was caught transporting fifty-nine pounds of marijuana across the Mexico-United States border. Compl. ¶ 8; Def.'s Facts ¶¶ 1-2. Unbeknownst to Rivera, the vehicle contained twenty-two packages of marijuana, located between the upholstered walls and the body of the vehicle, at the time of sale. See Compl. ¶¶ 15, 40; Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Def.'s Mot.) at 2; Plaintiffs Francisco Javier Rivera Agredano and Alfonso Calderon Leon's Opposition to Defendant USA's Motion to Dismiss or, in the Alternative, for Summary Judgment (Pls.' Resp. or Response) at 4.

On January 24, 2002, Rivera and Calderon, business partners, were making a delivery on behalf of their printing company to a grocery store in the city of Tijuana, Baja California, Mexico. Compl. ¶ 14; Pls.' Resp. at 3-4; Declaration of Alfonso Calderon Leon (Calderon Decl. or Declaration) ¶ 4. They traveled from the City of Ensenada, Baja California, Mexico to make the delivery. En route, they were stopped at a checkpoint known as El Sauzal. Pls.' Resp. at 3-4; Calderon Decl. ¶ 4; Def.'s Facts ¶ 6. Mexican authorities discovered twenty-two packages of marijuana between the upholstered walls and body of the car. See Compl. ¶¶ 15, 40; Def.'s Mot. at 2; Pls.' Resp. at 4. Plaintiffs were arrested and spent one year in Federal Prison in Mexico before they were declared innocent and released. Compl. ¶¶ 15-16, 40; Def.'s Facts ¶ 7.

On November 14, 2002, plaintiffs filed a claim in the United States District Court for the Southern District of California pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671-80, alleging negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, fraud or intentional misrepresentation, negligent misrepresentation, negligent and intentional infliction of emotional distress, and violation of California's Consumer Legal Remedies Act, § 1770(a)(14). Def.'s App. at 20-47. On June 29, 2004, the United States Supreme Court issued its decision in Sosa v. Alvarez-Machain, 542 U.S. 692 (2004), finding that a cause of action could not lie under the

---

[3]Having signed the disclaimer, Rivera is estopped from asserting that he never saw it or that the clause does not apply to him. Rodriguez, 69 Fed. Cl. at 496 (citing Richardson Camera Co. v. United States, 467 F.2d 491, 496 (Ct. Cl. 1972).

Federal Tort Claims Act unless the alleged tort occurred in the United States. Sosa v. Alvarez-Machain, 542 U.S. 692, 703-04 (2004). On or about November 3, 2004, Compl. ¶ 3, the United States District Court for the Southern District of California granted defendant's motion for summary judgment, finding that the action was barred under the Federal Tort Claims Act because plaintiffs' arrest occurred in Mexico.

Thereafter, plaintiffs and defendant stipulated to file an amended complaint and to transfer the action to this court. Compl. ¶ 3. On February 3, 2005, pursuant to the parties' stipulation, the United States Court for the Southern District of California dismissed the plaintiffs' claims without prejudice, granted the parties' motion to amend, and transferred the action to this court.

On June 8, 2005, the case was transferred to this court. On June 17, 2005, plaintiffs filed their amended complaint, alleging breach of warranty, breach of contract, and breach of the covenant of good faith and fair dealing. On September 30, 2005, defendant filed its Motion to Dismiss or, in the Alternative, for Summary Judgment (Def.'s Mot. or Motion), alleging that this court lacks jurisdiction because plaintiffs' claims sound in tort or, alternatively, that the material facts are not in dispute and that the facts as alleged entitle defendant to judgment as a matter of law. Def.'s Mot. at 1-22. In support of its motion for summary judgment, defendant argues (1) that the "as is" clause in the terms of sale precludes the existence of an implied warranty, id. at 12-16; (2) that defendant did not breach the implied covenant of good faith and fair dealing because it did not "specific[ally] inten[d] to injure" plaintiffs or harbor "actual malice" toward them, id. at 16-18 (citing Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002), and Carolina Tobacco Co. v. Bureau of Customs & Border Prot., 402 F.3d 1345, 1350 (Fed. Cir. 2005)); (3) that the damages plaintiffs allege are unrecoverable because defendant's breach did not directly cause plaintiffs' harm, id. at 18-20; and (4) that plaintiff Calderon was not a third-party beneficiary of the contract of sale and therefore cannot recover under the contract, id. at 21. Along with its Motion, defendant filed its Proposed Findings of Uncontroverted Fact (Def.'s Facts). On November 1, 2005, plaintiffs filed their Opposition to Defendant USA's Motion to Dismiss or, in the Alternative, for Summary Judgment, with Appendix (Pls.' Resp. or Response), arguing (1) that this court has jurisdiction because defendant's failure to search the vehicle constituted a breach of contract, Pls.' Resp. at 15; (2) that the "as is" clause does not preclude the existence of a warranty because its scope is not broad enough to cover the defect plaintiffs allege, id. at 20; (3) that there is a triable issue of material fact as to whether defendant's alleged failure to search the vehicle prior to sale for the purpose of increasing the resale value of the vehicle and defendant's concomitant failure to disclose its actions constitute a breach of the covenant of good faith and fair dealing, id. at 17, 19-21; (4) that the damages sustained are recoverable because they were foreseeable and in fact occurred, id. at 2, 17-18; and (5) that plaintiff Calderon is a

third-party beneficiary[4] and accordingly entitled to recover under the contract, id. at 17. Plaintiffs further moved the court for "leave to amend the[ir] complaint to allege additional facts to establish the causes of action set forth in the complaint," "if necessary." Id. at 1. Along with their Response, plaintiffs filed their Response to [Defendant's Proposed] Statement of Uncontroverted Facts in Opposition to Defendant USA's Motion to Dismiss or, in the Alternative, for Summary Judgment (Pls.' Facts). On December 2, 2005, defendant filed its Reply in Support of Its Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Def.'s Reply or Reply) accompanied by Defendant's Response to Plaintiffs' Proposed Findings of Uncontroverted Fact. In its Reply, defendant argued that plaintiffs failed to allege a basis for jurisdiction, that plaintiffs failed to demonstrate a genuine issue of material fact, and that plaintiffs should not be allowed to amend their complaint. Def.'s Reply at 1-19.

## II. Discussion

### A. Standard of Review

The United States Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (2000). The court does not have jurisdiction to render judgment upon actions sounding in tort. Id. When a defendant challenges this court's jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC), the plaintiff bears the burden of proving that jurisdiction is proper. Corrigan v. United States, 68 Fed. Cl. 589, 592 (2005); accord Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1383 (Fed. Cir. 2002); Reynolds v. Army and Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988). In order to establish jurisdiction over the subject matter, the plaintiff must plead facts which would entitle him to relief. Toxogon, 312 F.3d at 1383; see Corrigan, 68 Fed. Cl. at 592. In evaluating a claim pursuant to RCFC 12(b)(1) for lack of jurisdiction over the subject matter, the court must accept as true any undisputed allegations of fact made by the non-moving party and draw all reasonable inferences from those facts in the non-moving party's favor. Skillo v. United States, 68 Fed. Cl. 734, 738 (2005); accord Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); Reynolds, 846 F.2d at 747. In deciding a motion to dismiss for lack of subject matter jurisdiction, the court need only decide contested facts relevant to the inquiry into subject matter jurisdiction. Betz v. United States, 40 Fed. Cl. 286, 290 (1998); see Banks v. United States, 69 Fed. Cl. 206, 209 (2006).

---

[4]In their complaint, plaintiffs allege that plaintiff Rivera is in privity of contract with the United States and that plaintiff Calderon is a third-party beneficiary of the contract for sale. Compl. ¶ 31. In its Response, plaintiffs allege that both plaintiffs are third-party beneficiaries of the contract between the United States Customs Service and auctioneer EG&G, which contract, plaintiffs allege, contained a term to search the vehicle prior to resale. Pls.' Resp. at 17. The court addresses plaintiffs' claims of third-party beneficiary status below.

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." RCFC 56(c). A fact is "material" if it might significantly affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party bears the initial burden of showing the absence of any issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Corrigan, 68 Fed. Cl. at 592. Once the moving party has come forth with proof of the absence of any material fact, however, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." RCFC 56(e); Celotex, 477 U.S. at 322; Haynes v. United States, 51 Fed. Cl. 754, 758 (2002). The non-moving party is entitled to all applicable presumptions and inferences, H.F. Allen Orchards v. United States, 749 F.2d 1571, 1574 (Fed. Cir. 1984); Banks, 69 Fed. Cl. at 209, and the court must view "the inferences to be drawn from the underlying facts . . . 'in the light most favorable to the [non-moving] party,'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

B. Subject Matter Jurisdiction

Defendant has moved to dismiss plaintiffs' claims pursuant to RCFC 12(b)(1) for "lack of jurisdiction over the subject matter," RCFC 12(b)(1), because plaintiffs' claims sound in tort, Def.'s Mot. at 9. Specifically, defendant asserts that "although [plaintiffs' claim is] styled as a claim for breach of contract," plaintiffs' claim is actually a tort claim because plaintiffs seek consequential damages and "a claim that seeks consequential damages is grounded in tort and therefore beyond the jurisdiction of the Court." Id. In order to recover contract damages, defendant asserts, plaintiffs would have had to allege an economic injury. Id. at 11.

Plaintiffs maintain that this court has jurisdiction over their claims because defendant's conduct, although tortious, specifically relates to defendant's contractual obligation. Pls.' Resp. at 15. Quoting Pratt v. United States, plaintiffs state, "[a] claim for tortious breach of contract . . . is not a tort independent of the contract so as to preclude Tucker Act jurisdiction. . . . For jurisdictional purposes, the tortious conduct must specifically relate to a contractual obligation." Id. (quoting Pratt v. United States, 50 Fed. Cl. 469, 480-81 (2001)). Plaintiffs allege that "the obligation to search the vehicles in a reasonable fashion was an integral component of the contract for sale." Id.

The jurisdiction of this court is not limited by the tortious nature of a claim otherwise cognizable in it. See, e.g., Chain Belt Co. v. United States, 115 F. Supp. 701, 711-12 (Ct. Cl. 1953) ("While it is true that this court does not have jurisdiction over claims sounding primarily in tort, an action may be maintained in this court which arises primarily from a contractual undertaking regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract."). In particular, a claim for tortious breach of contract is not precluded merely because the claim, though rooted in

contract, also sounds in tort. Id.; Pratt, 50 Fed. Cl. at 480 (stating that a claim for tortious breach of contract has been recognized "not [to be] a tort independent of the contract so as to preclude Tucker Act jurisdiction."); see also Chain Belt, 115 F. Supp. at 712. Nor does the fact that consequential damages are alleged make the claim a tort claim; rather, an allegation of "consequential damages" presumes that the plaintiffs are proceeding under a contract theory. See, e.g., Bohac v. Dep't of Agric., 239 F.3d 1334, 1339-40 (Fed. Cir. 2001) (recognizing "consequential damages" as a "contract law concept"). As long as the claim "specifically relate[s] to a contractual obligation," Pratt, 50 Fed. Cl. at 480, it will survive a motion to dismiss.

Here, plaintiffs have pleaded facts stating a contract claim over which this court has jurisdiction. Specifically, plaintiffs allege that "the obligation to search the vehicles in a reasonable fashion was an integral component of the contract for sale." Pls.' Resp. at 15. In support of their allegation, plaintiffs argue that "the fact that these sales were presented as US forfeiture sales created an affirmation of fact that would lead the reasonable purchaser to believe that the vehicles had been adequately searched prior to the sale (or at least that the search was not intentionally limited to increase [defendant's] profits)," id. at 19, that defendant had a policy that "prior to the sale of all conveyances seized and forfeited for the smuggling of controlled substances, a final canine screening or inspection must occur" "to ensure that each conveyance is sold free of contraband," id. at 6 (quoting deposition of Robert Root[5]), but that defendant limited the search in order to "minimize the damage [to the] vehicle for resale purposes," id. at 8 (quoting Deposition of Officer Joseph Marilao[6]), and that, "if all of the search techniques . . . described" as constituting required policy had been performed on plaintiffs' vehicle, the inspection would have detected the contraband present in plaintiffs' vehicle because of the sheer volume present there, id. at 7 (quoting Deposition of David Murphy[7]). Plaintiffs contend that they relied on defendant to conduct a reasonable search, Compl. ¶¶ 33, 37, and state in substantially similar language in their declarations that they "believed that the USA had the best detection devices available and would completely search a vehicle before selling it." Declaration of Francisco Javier Rivera Agredano (Rivera Decl. or Declaration) ¶ 11; see also Declaration of Alfonso Calderon Leon (Calderon Decl. or Declaration) ¶ 11. Plaintiff Rivera continues, "If I had known [that defendant was curtailing the searches], I would never have purchased this vehicle . . . ." Rivera Decl. ¶ 11; see also Calderon Decl. ¶ 11 ("If I had known [that defendant was curtailing

---

[5]The Deposition of Robert Root (Root Deposition) is appended to Plaintiffs' Response and filed as Documents 19-5 and 19-6 in the court's electronic case filing (ECF) system. The specific language plaintiff quotes is located at Document 19-6, page 1 (at page 30 of the Root Deposition).

[6]Pls.' Resp. App., ECF Docs. 19-10 to 19-11, 19-11 at 1 (Marilao Deposition at 27).

[7]Pls.' Resp. App., ECF Docs. 19-7 to 19-9, 19-9 at 1 (Murphy Deposition at 43-44).

searches], I would never have agreed that RIVERA should purchase this vehicle . . . ."). Plaintiffs also allege that "the breach [failure to search] occurred in order to increase the financial gain received by [defendant] at the auction sale." Pls.' Resp. at 7. Plaintiffs claim that the fact that defendant would perform a reasonable search prior to resale constituted a base assumption on which the parties formed the contract. Plaintiffs have therefore pleaded facts that "specifically relate to a contractual obligation" that constituted a condition on which the contract was made. See Pratt, 50 Fed. Cl. at 480. Because plaintiffs' claim, if proved, "specifically relate[s]" to an obligation arising out of a contract made with the government, id., plaintiffs have pleaded facts that, if proved, may entitle them to relief. Therefore, the court declines to dismiss plaintiffs' claims for lack of jurisdiction over the subject matter.

C. Summary Judgment

Defendant has moved in the alternative for summary judgment pursuant to RCFC 56(c), arguing that the material facts are not in dispute and that the facts as alleged entitle defendant to judgment as a matter of law. Def.'s Mot. at 11-22. In support of its motion for summary judgment, defendant argues (1) that the "as is" clause precludes the existence of an implied warranty, id. at 12-16; (2) that defendant did not breach the implied covenant of good faith and fair dealing because it did not "specific[ally] inten[d] to injure" plaintiffs or harbor "actual malice" toward them, id. at 16-18 (citing Am-Pro, 281 F.3d at 1239; Carolina Tobacco, 402 F.3d at 1350); (3) that the damages plaintiffs allege are unrecoverable because defendant's breach did not directly cause plaintiffs' harm, id. at 18-20; and (4) that plaintiff Calderon was not a third-party beneficiary of the contract of sale and is therefore ineligible to recover under the contract, id. at 21-22. The court addresses defendant's arguments in turn.

1. Implied Warranty

In their complaint, plaintiffs claim the existence of "an implied warranty that the [vehicle] was reasonably clear of contraband before releasing the same for sale," Compl. ¶ 34, and an "implied warranty of merchantability," id. ¶ 38, that defendant breached by "fail[ing] to conduct a thorough and complete search," id. ¶ 36, and "by selling the [vehicle] . . . with 17 kilograms of marijuana stored in a hidden compartment as a result of an incomplete and inadequate search," id. ¶ 38. Alternatively, plaintiffs allege that "an implied in fact and implied in law term of the contract was that [defendant] would conduct a complete and thorough search of the [vehicle] before it was sold at a public auction to ensure that . . . excessive amounts of contraband were not remaining in the [vehicle]," id. ¶ 43, and that defendant breached that implied term when it failed to conduct a thorough and adequate search of the vehicle before releasing it for sale, id. ¶ 44.

Defendant argues that the contract for sale did not contain any implied warranties because the contract for sale contained an "as is" clause, which dealt with the same subject as the alleged warranties and thereby precluded their existence. Def.'s Mot. at 12. Defendant further argues that the "as is" clause operated to shift the risk of loss to the buyer. Id. at 13, 16 ("Mr. Rivera understood that he bore the risk of the transaction . . . ."). The court finds the government's risk-shifting argument inapposite. Although the possession of narcotics by a citizen is illegal, the possession of narcotics by the government is not illegal. Accordingly, the government cannot shift the risk of loss to the buyer when it bears no risk of loss itself.

Plaintiffs respond that the plain language of the disclaimer at issue indicates that it covers only "warranties of title, identity, physical condition and registration status" and that the hidden presence of "significant amounts of . . . narcotics" is not covered by the disclaimer. Pls.' Resp. at 20 ("Nowhere does [the disclaimer] advise the buyer that these vehicles could still have significant amounts of narcotics hidden within them, and that the purchase[r] knowingly agrees to accept the vehicle despite this fact."). Furthermore, argue plaintiffs, "an [']as[ ]is['] provision does not relieve a seller of all responsibility of disclosure," id. at 19, especially where, as here, the context of the sale created "an affirmation of fact" which in turn created a warranty, id. at 19, and where defendant made an "affirmative," "material misrepresentation of an implied-in-fact term of the contract" in the form of a stated policy to conduct a thorough search, id. at 20-21. Plaintiff argues that there exists "a triable issue of material fact as to whether or not a bidder at a government forfeiture auction 'should know' that [defendant] was limiting its searches of vehicles in order to make additional profit in a subsequent commercial transaction with the purchaser." Id. at 24.

As a threshold matter, the court must resolve the question of what constitutes the contract for purposes of summary judgment. Plaintiffs state, "The contract was in writing and consisted of a document to transfer title to RIVERA." Compl. ¶ 42. Although defendant at one point relies on plaintiffs' statement to argue that the contract consists solely of the certificate of title to the vehicle, Def.'s Mot. at 13-14, defendant also relies on the "as is" clause as a condition of participation in the auction to which plaintiff Rivera agreed by signing the Bidder Registration Form, id. at 14-15; Def.'s Facts ¶ 4 ("As a condition of participating in the September 5, 2001 auction, Mr. Rivera completed and signed an EG&G bidder registration form."); see Def.'s Mot. App. at 17 (Rivera's signed Bidder Registration Form). Although plaintiffs claim that they were not aware of the "as is" term of the contract at the time of sale, e.g., Pls.' Facts ¶ 3, plaintiffs do not argue that Rivera did not sign the bidder registration form as a condition of participation in the auction, Pls.' Facts ¶ 4 (disputing Def.'s Facts ¶ 4 only "to the extent that it infers that plaintiffs were aware of the 'as[]is' provision in the sale catalog at the time of the sale"). Having signed the bidder registration form containing an agreement to abide by the terms contained in the sale catalog, one of which is the "as is" provision, plaintiffs are estopped from claiming that they are not bound by the "as is" provision. See Richardson Camera

Co. v. United States, 467 F.2d 491, 496 (Ct. Cl. 1972) (signing contract in ignorance of contents does not prevent application of those contents to signer); accord Rodriguez, 69 Fed. Cl. at 496 (finding, under similar facts, that, where plaintiff had signed bidder registration form indicating that she would "comply with the terms of sale contained in the sale catalog" which in turn contained an "as is" provision, plaintiff's lack of receipt of the sales catalog and lack of knowledge of the "as is" term did not prevent the application of the term to her). The court construes the contract as including the "as is" clause at issue for purposes of resolving defendant's motion for summary judgment.

Where possible, the court construes "general [contract] provisions seeming to immunize the Government from paying damages due to its own breach or negligence . . . as not covering serious breaches, especially willful defaults, causing important loss to the [Government's contracting partner]." Freedman v. United States, 320 F.2d 359, 366 (Ct. Cl. 1963). The first disclaimer at issue states:

> The vehicles offered to you for purchase at any U.S. Customs Auction are sold "AS IS, WHERE IS". This means that neither U.S. Customs [n]or McCormack Auction Company[] [n]or EG & G Dynatrend[] extend any warranties or promises of any kind regarding any aspect of the vehicle or its ability to operate, including but not limited to the vehicle's identity, previous ownership, physical condition, registration status, or ability to pass a smog certification.

Def.'s Mot. App. at 16.

The second disclaimer states: "WARRANTY/GUARANTEE: All merchandise is sold on an 'AS IS, WHERE IS' basis, without warranty or guarantee as to condition, fitness to use, or merchantability stated, implied or otherwise. Please bid from your personal observations." Def.'s Mot. App. at 15. This court recently construed these same "as is" clauses in Rodriguez. 69 Fed. Cl. at 496-98. In Rodriguez, the court found that "the contract specifically disclaimed express and implied warranties, but only respecting the vehicle's condition, fitness to use, or merchantability." Id. at 497-98. The court finds that, here, as in Rodriguez, the plain meaning of the "as is" clause limits its scope to the construction, maintenance, and mechanical operation of the vehicle and does not cover a situation in which "the vehicle had been modified in a way that had no effect on its ability to function for transportation" by "introduc[ing] an attribute not ordinarily associated with [it]." Id. at 498.

The additional language contained in the disclaimer warning bidders to "bid from [their] personal observations," Def.'s Mot. App. at 15, supports the court's interpretation of the disclaimer, see Rodriguez, 69 Fed. Cl. at 498. Although this language would ordinarily give rise to a duty to inspect on the part of the buyer, the disclaimer could not have had such an effect in this case because, even if defendant had permitted prospective buyers to inspect the vehicles prior to sale, the narcotics were not visible–even from the

inside of the vehicle–so that plaintiffs could not have inspected the vehicle closely enough to discover narcotics hidden beneath the upholstery. See Def.'s Mot. at 16 (indicating that neither defendant nor plaintiffs discovered the narcotics); Pls.' Resp. at 7, 20 (indicating that if the search techniques ordinarily employed by defendant had been employed by defendant in this case, defendant would have discovered the narcotics); Root Deposition at 30 (indicating that "a final canine screening or inspection" "of all conveyances seized and forfeited for the smuggling of controlled substances" "must occur" "prior to . . . [re]sale"); Murphy Deposition at 43-44 (indicating that, if the search techniques he had described had been performed on the vehicle, Murphy "would hope that [defendant] would" have detected thirty-seven pounds of marijuana in it). In fact, according to the facts as presented, it appears that something akin to a "canine screening or inspection" would have been required to detect the hidden narcotics. See, e.g., Pls.' Resp. at 6. Although the record does not contain allegations as to whether plaintiff Rivera did or did not search the vehicle prior to sale, the fact is irrelevant because Rivera's failure to inspect would not preclude denial of defendant's motion for summary judgment in this case.

Furthermore, even if the scope of the disclaimers were broad enough to cover narcotics hidden in the vehicle, plaintiffs have sufficiently established that there are genuine issues of material fact as to whether the context of the sale and the policy to search seized vehicles prior to resale constituted an affirmative representation which would negate the disclaimer and create a warranty.

Although plaintiffs have established genuine issues of material fact as to the existence of a warranty implied in fact, plaintiffs cannot state a cognizable claim for a warranty implied in law because the court lacks jurisdiction to entertain claims regarding warranties implied in law. E.g., Hatzlachh Supply Co. v. United States, 444 U.S. 460, 465 (1980). Therefore, to the extent plaintiffs rely on a theory of an implied-in-law warranty, their claim must be dismissed.

For the foregoing reasons, the court declines to grant summary judgment in favor of defendant on the issue of the existence of an implied-in-fact warranty.

2. Implied Covenant of Good Faith and Fair Dealing

Plaintiffs allege that defendant breached the covenant of good faith and fair dealing when it curtailed inspection of vehicles–which already had been determined to contain drugs–for the purpose of trying to secure a higher price at auction. Compl. ¶ 54. In particular, plaintiffs state that defendant is in a "position superior" to plaintiffs "in regard to the detection and removal of contraband" and that defendant "knew, or should have known, that . . . plaintiff [Rivera] would rely upon [defendant] to conduct a reasonable and adequate search." Id. Plaintiffs also contend that defendant's failure to

search was for the express purpose of making a greater profit in the sale of the vehicle at auction. Pls.' Resp. at 7; see Compl. ¶¶ 23, 54.

Defendant contends that it is entitled to summary judgment as a matter of law as to plaintiffs' claim that defendant breached the covenant of good faith and fair dealing because plaintiffs would have to show "specific intent to injure" plaintiff Rivera on the part of defendant or "actual malice" toward Rivera, Def.'s Mot. at 17 (citing Am-Pro, 281 F.3d at 1239; Carolina Tobacco, 402 F.3d at 1350), and that plaintiffs have failed even to allege such intent on the part of defendant, id. at 18. Defendant further argues that "an alleged violation of the implied covenant of good faith and fair dealing must be grounded in the express provisions of the contract." Id. at 17 (citing Price v. United States, 46 Fed. Cl. 640, 651 (2000) (finding that the obligation of good faith and fair dealing only attaches to "a specific substantive obligation, mutually assented to by the parties"). Here, defendant argues, "plaintiffs have failed to make . . . a[n] . . . allegation in their complaint linking the asserted breach of implied covenants . . . to the express contract." Id. at 17.

The covenant of good faith and fair dealing is implied in every contract. Centex Corp. v. United States, 395 F.3d 1283, 1304 (Fed. Cir. 2005). The covenant provides that no party may act to destroy the reasonable expectations of its contracting partner regarding the fruits of the contract and applies to the government just as it does to private parties. Id.; see Chain Belt, 115 F. Supp. at 709-10 (holding that government could not act negligently when performing its obligations under a contract). A contracting party, including the government, may not "deprive [its] contracting partner[] of a substantial measure of the fruits of the contract and appropriate those fruits, pro tanto, to itself." Centex, 395 F.3d at 1305. Although the implied covenant of good faith and fair dealing cannot be used to expand a party's contractual duties beyond those in its express contract, the object of the contract is presumed to be subject to the covenant of good faith and fair dealing and the exact prohibited conduct need not be expressed. Id. at 1306.[8]

---

[8]In order to show a breach of the covenant of good faith and fair dealing, the plaintiff need not provide evidence to show that the government acted in bad faith. See Centex Corp. v. United States, 395 F.3d 1283, 1304-06 (Fed. Cir. 2005). This is because a claim that the government breached the covenant of good faith and fair dealing is not the same as a claim that the government acted in bad faith. See id. at 1305. An allegation of breach of the covenant of good faith and fair dealing is an allegation that the party's contracting partner deprived it of the fruits of the contract, see id., and is often motivated by self-interest, see, e.g., id. at 1305, 1307 (legislative act was "specifically targeted at the fruits of contracts enjoyed by the government's contracting partners"), while bad faith is motivated by malice, see, e.g., Libertatia Assocs., Inc. v. United States, 46 Fed. Cl. 702, 710 (2000) (finding that agency official "expressed ill will and intent to injure" plaintiff), and does not necessarily result in a deprivation of the fruits of the contract. This case does not appear to the court to be of a type intended to be governed by Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002). Nor does this case appear to involve a dispute about the interpretation of a regulation affording an agency

The court declines to grant defendant's motion for summary judgment as to its claim that defendant did not breach the covenant of good faith and fair dealing. It may be that plaintiffs can prove that the government failed to conduct an adequate search for the purpose of obtaining a higher resale value for the vehicle at auction. This could be a case of the government's appropriating profits to itself at the expense of its contracting partner in direct contravention of the covenant of good faith and fair dealing. See Centex, 395 F.3d at 1305.

Or, if plaintiffs prove that they could not have discovered the hidden contraband in the circumstances of the auction sale, and that the government had a policy to search thoroughly any vehicles seized because they contained narcotics, but that the government acted in direct contravention of its stated policy, plaintiffs may be able to show that the government had a duty to notify plaintiffs of the government's failure to search the vehicle thoroughly or a responsibility to put plaintiffs on notice that it would be their responsibility to inspect the vehicle for contraband and to allow them the opportunity to conduct a meaningful inspection.

Plaintiffs also advert briefly to the concept of the government's superior knowledge. See, e.g., Compl. ¶ 54 (noting that defendant is in "position superior" to plaintiffs with regard to detection of contraband and resources available to search and that defendant knew or should have known that plaintiffs would rely on defendant to conduct an adequate search); Pls.' Facts ¶ 20 (noting that defendant is required by its policies and procedures to search seized automobiles prior to resale "when there is probable cause to suspect narcotics to be hidden within the vehicle"); Pls.' Resp. at 9 (same); Rivera Decl. ¶ 11 (stating reliance on belief that defendant "had the best detection devices available and would completely search a vehicle before selling it"). The superior knowledge doctrine is related to the concepts of good faith and fair dealing and appears relevant to the circumstances of this case.

The superior knowledge doctrine provides that, where the government has vital information about the transaction or object of the transaction, knows that its contracting partner has no knowledge of and no reason to obtain such information, misleads its contracting partner as to that information, or fails to put its contracting partner on notice to inquire, and does not provide the relevant information, the government has breached the contract. GAF Corp. v. United States, 932 F.2d 947, 949 (Fed. Cir. 1991). Where the government has a policy providing that it will search a vehicle prior to resale when there is probable cause to suspect that narcotics are hidden within the vehicle, Pls.' Resp. at 9 ("[Defendant] is required under its policies and procedures to search any automobile when there is probable cause to suspect narcotics to be hidden within the vehicle . . . .");

---

wide discretion, as in Carolina Tobacco Company v. Bureau of Customs and Border Protection, 402 F.3d 1345, 1350 (Fed. Cir. 2005). Defendant's authorities for dismissal, see Def.'s Mot. at 16-18, are inapposite here.

Root Declaration at 30 ("'Prior to the sale of all conveyances seized and forfeited for the smuggling of controlled substances, a final canine screening or inspection must occur. This is to ensure that each conveyance sold is free of contraband.'" (quoting internal memorandum)), and where, as here, the vehicle was seized because of the presence of contraband, Def.'s Facts ¶ 1; Def.'s Mot. App. at 1-5 (government's records of arrest of Jimenez and seizure of vehicle), the government may be found to have misled its contracting partner or, alternatively, failed to put its contracting partner on notice to inquire as to the presence of contraband in the vehicle, see GAF Corp., 932 F.2d at 949. Because the government did not provide the relevant information, the government may have breached its contractual duty. For this further reason, the court declines to grant summary judgment as to defendant's claim for a breach of the covenant of good faith and fair dealing.

3. Damages

Plaintiffs' prayer for damages includes "general, special and statutory damages according to proof," "statutory attorney[']s fees and costs," and "such other and further relief as the court may deem proper." Compl. at 14-15. Plaintiffs describe the damages they have sustained as a result of defendant's alleged breach as follows: "loss of liberty, pain and suffering, physical injuries, lost wages, loss of future earning capability, emotional distress, mental anguish, property damages, and other general and special damages in an amount to be established at trial." Id. ¶ 63.

Defendant moves for summary judgment as to the damages plaintiff alleges, asserting that those damages are "[r]emote [a]nd [s]peculative." Def.'s Mot. at 18. Specifically, defendant contends that defendant's failure to search the vehicle adequately may not have been the direct cause of the damages plaintiffs allege–including detention–because plaintiffs' "deci[sion] to take the subject vehicle to a foreign country" and the Mexican authorities' discovery of the marijuana and subsequent arrest of plaintiffs constituted "intervening incident[s]" that "complicate[d] or confuse[d] the certainty of the result between the cause and the damage." Def.'s Mot. at 20 (quoting SAB Construction, Inc. v. United States, 66 Fed. Cl. 77, 88 (2005)). Defendant further asserts that attorney's fees and court costs are unrecoverable contract damages because "plaintiff[]s['] decision to bring the suit[] and to incur the costs" "breaks the chain of causation between the government's alleged breach and the litigation." Def.'s Mot. at 19 (quoting SAB Construction, 66 Fed. Cl. at 88).

Plaintiffs respond that the damages they sustained were "foreseeable" and therefore recoverable under the contract. Pls.' Resp. at 17. Plaintiffs argue that their detention and arrest were foreseeable because defendant sold the vehicle "at an . . . auction near the border" to a "Mexican national" so that "it [was] very foreseeable that the vehicle [would] be driven into Mexico" and because other cases with similar facts have put defendant on notice that this sort of discovery, detention and subsequent arrest

may occur as a result of failure to remove narcotics from a vehicle. Id. at 17-18 (citing Cervantes v. United States, 330 F.3d 1186 (9th Cir. 2003), and Rodriguez).[9] Plaintiffs further assert that attorney's fees and costs "incurr[ed] . . . to obtain their freedom in the Mexican criminal action w[ere] not at their election" so that "the holding in SAB Construction does not bar the instant case as a matter of law." Id.

"The general rule in common law breach of contract cases is to award damages that will place the injured party in as good a position as he or she would have been in had the breaching party fully performed." Wells Fargo Bank, N.A. v. United States, 88 F.3d 1012, 1021 (Fed. Cir. 1996) (quoting Estate of Berg v. United States, 687 F.2d 377, 379 (Ct. Cl. 1982)); Freedman, 320 F.2d at 360, 367 (holding that plaintiff could recover "the gain he would have realized" or his "net damages" if the United States had performed under the contract). In order to be recoverable in contract, damages against the United States must be foreseeable at the time the contract is executed. Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639, 651-52 (2004) (finding Department of Energy not responsible for damages where those damages could not be foreseen); see Bohac v. Dep't of Agric., 239 F.3d 1334, 1340 (Fed. Cir. 2001) (reciting requirement under common law that damage be foreseeable at time contract executed). Attorney's fees are usually considered unrecoverable in contract because they are not foreseeable at the time the contract is executed. E.g., Kania v. United States, 650 F.2d 264, 269 (Ct. Cl. 1981) (stating that "[attorney's fees and other litigation expenses are] the kind of consequential damages not normally awarded in contract breach cases" because they are "the remote indirect consequences of the breach."). Where defendant's breach directly causes plaintiff to incur damages, however, those damages are recoverable. E.g., Terteling v. United States, 334 F.2d 250, 255-56 (Ct. Cl. 1964); Chain Belt, 115 F. Supp. at 719-20;

[9]Plaintiffs cite Cervantes v. United States, 330 F.3d 1186 (9th Cir. 2003), for the proposition that damages sustained by Rivera and Calderon were foreseeable. Pls.' Resp. at 17-18. On October 22, 1999, Jose Cervantes was arrested at a border crossing for "transporting" across the Mexico-United States border 119 pounds of marijuana that had been left in the car he had purchased at a United States Marshals Service auction. Cervantes, 330 F.3d at 1187. The complaint in Cervantes was originally filed in the District Court for the Southern District of California on January 23, 2001, prior to the September 5, 2001 date on which plaintiff Rivera purchased the vehicle at auction. Docket, Cervantes v. United States, No. 01-56929, at 2 (U.S. Court of Appeals for the Ninth Circuit). Although this case put the United States on notice that marijuana left in vehicles may place purchasers in danger of arrest by authorities generally, the case did not put the United States on notice of the danger posed by a search by Mexican authorities specifically.

Plaintiffs also cite Rodriguez v. United States, 69 Fed. Cl. 487 (2006), for the proposition that the damages incurred by plaintiffs Rivera and Calderon were foreseeable. Although the facts in that case are similar, the vehicle in that case was not purchased until March 3, 2003. Because the relevant events in Rodriguez occurred subsequent to Rivera's purchase of the vehicle and plaintiffs' arrest, Rodriguez could not have put the United States on notice.

see also Bohac, 239 F.3d at 1340 (recognizing inability to collect emotional distress damages as a general rule, but recognizing that the exceptions to this general rule include cases where "the breach of the contract is particularly likely to cause serious emotional disturbance").

Plaintiffs have established the existence of a genuine issue of material fact as to whether damages they sustained in Mexico are recoverable in contract against the United States. Because one of the main, known purposes for which vehicles are purchased is travel, and where, as here, the auction took place close to the border and plaintiffs were Mexican nationals, the court cannot say that plaintiffs' decision to drive into Mexico was not "foreseeable." The court also cannot say that a search of the vehicle by Mexican authorities was not foreseeable–especially where, as here, defendant may have been put on notice of the likelihood of a search by the occurrence of similar circumstances in Cervantes. If, as plaintiffs allege and as defendant has failed to disprove, the arrest and detention were foreseeable at the time of the sale and the search constituted an implied term of the contract, plaintiffs appear at this juncture to have stated a colorable claim for damages against the United States.

Furthermore, defendant has failed to establish the absence of genuine issues of material fact as to the particular damages plaintiffs claim to have suffered defending a criminal suit in Mexico. If, as plaintiffs allege and defendant has failed to disprove, the arrest and detention were foreseeable and a direct result of defendant's failure to perform an adequate search of the vehicle prior to sale, the need to defend the suit was also foreseeable as a direct result of the detention and arrest. See Terteling, 334 F.2d at 256 (finding cost of defending suit against third party and attorney's fees recoverable in contract against United States where manner in which United States furnished gravel pit sites to contracting partner constituted direct cause of suit).[10] SAB Construction, 66 Fed.

---

[10]Kania v. United States, 650 F.2d 264 (Ct. Cl. 1981), is not to the contrary. In Kania, the plaintiff sued the United States for the cost of preparing his defense in connection with the United States' breach of an agreement of immunity from prosecution in exchange for truthful testimony before the grand jury. Kania, 650 F.2d at 266-67. The court held that because rights of citizens against the government "do not turn on contract doctrines but are matters of legal status," the plaintiff had not stated a breach of contract action within the jurisdiction of the court. Id. at 268. The court stated that the contract actions contemplated by Congress in its statutory waiver of sovereign immunity were "the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves" and that because the government was acting in its sovereign capacity in making this alleged "contract," the predecessor of this court did not have jurisdiction. Id. The court held in the alternative, however, that the costs of litigation were unrecoverable because they were "the remote indirect consequences of the breach" and not "directly in contemplation when the contract was made." Id. at 269. Because the court finds that plaintiffs allege a claim for damages that were foreseeable and direct consequences of the breach, Kania is not controlling.

Cl. at 90, relied on by defendant, does not mandate a different result. In that case, the plaintiff "affirmatively undertook litigation for its own benefit," and its claims against the third party whom it sued "existed independently of the government's alleged breach." SAB Constr., 66 Fed. Cl. at 89; see also Bighorn Lumber Co. v. United States, 49 Fed. Cl. 768, 771-74 (2001) (holding attorney's fees and costs of litigation incurred as a result of voluntary intervention in suit brought by third party, which delayed contract performance, not recoverable because they were not a direct, or immediate, result of the interruption and because they were not contemplated by the parties at the time the contract was executed). In this case, the plaintiffs' action in incurring costs to defend a criminal action against them was not plaintiffs' affirmative choice but was rather a necessary result of the situation in which plaintiffs found themselves because of defendant's alleged breach. Therefore, their defense does not constitute an intervening circumstance that "breaks the chain of causation" between the government's alleged breach and the litigation.

Certain damages that are not usually recoverable in contract are recoverable in extraordinary circumstances. The Restatement has recognized the right to recover damages for emotional distress in cases between carriers and passengers, innkeepers and guests, contracts for the proper disposition of dead bodies, and contracts for the delivery of messages concerning death. Restatement (Second) of Contracts § 353 cmt. a. The Federal Circuit has classified these exceptions as cases of breach of contract where the breach is "particularly likely to cause serious emotional disturbance." Bohac, 239 F.3d at 1340-41. Although plaintiffs' claims do not fall within an exception defined precisely by the Restatement, plaintiffs' claims certainly fall within the category of damages that, if foreseeable as resulting from the breach, are "particularly likely to cause serious emotional disturbance." Although the damages plaintiffs allege–including loss of liberty, pain and suffering, physical injuries, lost wages, loss of future earning capability, emotional distress, and mental anguish–may fall into the category described by the Restatement, the court declines to decide the issue of which particular damages are recoverable and awaits further development of the issue in motion practice and/or at trial.

4. Third-Party Beneficiary

Plaintiffs allege that plaintiff Calderon is a third-party beneficiary of the contract for sale and therefore entitled to indemnification for damages suffered under the contract. Compl. ¶ 31; see also id. ¶ 53 (stating that implied term of contract that defendant would perform adequate search prior to resale was intended to benefit all potential occupants of vehicle). Defendant moves for summary judgment as to plaintiff Calderon's claims, arguing that Calderon is not a third-party beneficiary of the contract because "nothing in the title document reflects any intention to benefit Mr. Calderon, or any other passenger. The mere fact that Mr. Calderon received a ride in Mr. Rivera's car falls far short of showing that he qualified for the exceptional privilege of third-party beneficiary status." Def.'s Mot. at 21. In their response, plaintiffs assert a new theory that they "were [both] third party beneficiaries of the contractual obligation [between the government and

auctioneer EG&G] and regulatory duty to conduct a thorough search," Pls.' Resp. at 17, and cite Klamath Irrigation District v. United States, 67 Fed. Cl. 504 (2005), in support of their position.[11] In particular, plaintiffs assert that "the pre-sale search was . . . for the benefit of the ultimate purchaser as there would be no other purpose" and analogize their case to Sullivan v. United States, 54 Fed. Cl. 214 (2002).[12] Pls.' Resp. at 16. Defendant responds that even if it were proper for the court to consider plaintiffs' newly proffered theory of contract liability, plaintiffs' argument "is unavailing" because "the Government's inspection policies arise from statutory and regulatory duties–not from any contractual duty owed to EG&G." Def.'s Reply at 8.

In order to recover damages for breach of contract, the party alleging the breach must be in privity of contract with the breaching party or be an intended third-party beneficiary of the contract. Cienega Gardens v. United States, 194 F.3d 1231, 1239 (Fed. Cir. 1998) (stating privity requirement "[t]o maintain a cause of action pursuant to the Tucker Act that is based on a contract"); Glass v. United States, 258 F.3d 1349, 1354 (Fed. Cir. 2001) (recognizing right of third-party beneficiary to recover damages for breach of contract). In order to have third-party beneficiary status under a contract, the contract "must reflect[] the express or implied intention of the parties to benefit the [third] party . . . directly." Glass, 258 F.3d at 1354; Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1997). "The intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended to be benefitted thereby." Montana, 124 F.3d at 1273. To be a third-party beneficiary, the person claiming third-party beneficiary status must be reasonable in relying on the promise as manifesting an intent to confer a right on him. Id.

Under the theory of plaintiffs' complaint, plaintiffs allege third-party beneficiary status as to plaintiff Calderon under the contract for sale between plaintiff Rivera and the United States. Compl. ¶ 31. The question is whether the contract for sale can be construed as intending to confer a right on Calderon as a passenger of the vehicle. The

[11]In Klamath Irrigation District v. United States, 67 Fed. Cl. 504 (2005), plaintiffs, who were landowners and districts in the Klamath River Basin area of Oregon, were found to be third-party beneficiaries of contracts between the United States and water districts to supply water for irrigation. See also Henderson County Drainage Dist. No. 3 v. United States, 53 Fed. Cl. 48 (2002) (finding riparian landowners to be third-party beneficiaries of a contract between the United States and drainage districts), aff'd, 147 Fed. Appx. 967 (Fed. Cir. June 14, 2005) (unpublished table decision).

[12]In Sullivan v. United States, 54 Fed. Cl. 214 (2002), the court, on a motion to dismiss, found that plaintiff, who was injured in an automobile accident by a government contractor who failed to obtain insurance as required by the contract, may be a third-party beneficiary of the contract because the purpose of any requirement to obtain insurance is the protection of the public. Sullivan, 54 Fed. Cl. at 216.

Uniform Commercial Code (UCC) informs the court's interpretation as to whether passengers of vehicles are considered third-party beneficiaries of contracts for the sale of vehicles. See Cruz-Martinez v. Dep't of Homeland Security, 410 F.3d 1366, 1371 (Fed. Cir. 2005) (relying on UCC to inform court's interpretation in construction of contract terms). Specifically, this court considers UCC § 2-318.

UCC § 2-318 is titled "Third Party Beneficiaries of Warranties Express or Implied." The majority of states have adopted UCC § 2-318, Alternative A. See Diane L. Schmauder, Annotation, Third-Party Beneficiaries of Warranties Under UCC § 2-318, 50 A.L.R.5th 327 § 2[a] (2005). UCC § 2-318, Alternative A provides that express or implied warranties attendant to the sale of goods extend only to the buyer's family, household and home guests. See Etchey v. United States, 15 Cl. Ct. 152, 155 (1988). UCC § 2-318, Alternative A does not, as a general rule, extend warranties to "guests," or passengers, of a car. In Thompson v. Reedman, for example, the plaintiff argued that, because UCC § 2-318 as adopted in Pennsylvania covers "a guest in the home," it should similarly be construed to cover "a guest in an automobile." Thompson v. Reedman, 199 F. Supp. 120, 121 (E.D. Pa. 1961). The court held, however, that "[i]t is too much of a leap . . . to classify a guest passenger in an automobile as a guest in the home." Id.; see also Lary Lawrence, 3A Anderson on the Uniform Commercial Code § 2-318:29, at 343 (3d ed. 2002 Revision). Despite the fact that a buyer and a seller of an automobile reasonably expect at the time of sale that the vehicle will be used to transport "guests" from time to time, any warranty provided by the contract is not construed to cover passengers of the vehicle.

The court believes that the question whether a passenger in a vehicle should be considered a third-party beneficiary is a close one. Common experience supports the view that future passengers would be in the contemplation of any parties to the sale of an automobile. From this perspective, a future passenger would fall into a class intended to be benefited by the contract, so that it would be reasonable for the passenger to rely on the contract as conferring a right on him. However, given the treatment of this exact issue by the Uniform Commercial Code and other cases and given that the version of the provision adopted by the majority of states which, although explicit in covering house guests, fails to cover passengers in a car, this court does not construe the auction contract as intending to benefit plaintiff Calderon.

The cases plaintiff cites are not to the contrary. In Sullivan, 54 Fed. Cl. at 216-17, the court found that the plaintiff, who was injured in an automobile accident by a government contractor who failed to obtain insurance as required by the contract, may have been a third-party beneficiary of the contract because the purpose of any requirement to obtain insurance is to protect the public. In Klamath, 67 Fed. Cl. at 534, plaintiffs were found to be third-party beneficiaries of a contract between the government and districts to supply water for irrigation. In these cases, the very purpose of the contract or contract term was to benefit the third party. In the case of the sale of an automobile,

however, the court cannot say that the main purpose of the sale is to protect or benefit future passengers.

Plaintiffs' late-appearing theory that they were third-party beneficiaries of a contract between the government and EG&G that provided for the search of seized vehicles prior to resale is simply not contemplated in plaintiffs' complaint. Even if the facts were pleaded, plaintiffs have provided no authority at all–direct, fairly analogous, or even vaguely analogous (and the court is aware of none)–to support the proposition that plaintiffs, as buyers, could be considered third-party beneficiaries of a contract whose primary purpose was performance of an auction. Accordingly, plaintiffs cannot proceed under a theory that they are third-party beneficiaries of the EG&G contract.

C. Motion to Amend

Plaintiffs request leave to amend their complaint, "if necessary," "to allege additional facts to establish the causes of action set forth in the complaint." Pls.' Resp. at 1. Specifically, plaintiffs "request leave to amend their complaint to the extent the factual allegations are deemed insufficient to support any of the requests for relief contained therein." Id. at 24. Defendant opposes plaintiffs' motion because, defendant alleges, any such amendment would be futile. "Plaintiffs identify no newly discovered evidence or change in facts that could change the outcome of this case even if the [c]ourt granted them leave to amend their complaint." Def.'s Reply at 18.

RCFC 15(a) permits amendment by right "once as a matter of course at any time before a responsive pleading is served." RCFC 15(a). Once that time has expired, "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party." Id. "[L]eave shall be freely given when justice so requires." Id. However, leave to amend a complaint will not be allowed where permitting leave to amend would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962) (discussing Fed. R. Civ. P. 15(a)); Leider v. United States, 301 F.3d 1290, 1299 n.10 (Fed. Cir. 2002).

Plaintiffs' request for leave to amend "if necessary" is general and fails to specify which additional facts are needed to establish any of their claims. Plaintiffs' request for leave also fails to indicate the reasons why an amendment is necessary or the ways in which that amendment would help them establish their claims. Without a specific statement as to the reasons why "justice [would] require" amendment, the court cannot allow plaintiffs to amend their complaint. Accordingly, the court DENIES plaintiffs' motion for leave to amend.

III. Conclusion

For the foregoing reasons, the court DENIES defendant's motion to dismiss for lack of subject matter jurisdiction; DENIES defendant's motion for summary judgment as

to the existence of any implied-in-fact warranty, breach of implied covenant of good faith and fair dealing, and available damages; GRANTS defendant's motion for summary judgment as to any alleged warranty implied in law; GRANTS defendant's motion for summary judgment as to plaintiff Calderon's third-party claims; and DENIES plaintiffs' motion to amend their complaint.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge