No. 05-608C
(Judge Emily Hewitt)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FRANCISCO JAVIER RIVERA AGREDANO and
ALFONSO CALDERON LEON,

Plaintiffs,

v.

UNITED STATES OF AMERICA

Defendants.

**PLAINTIFF FRANCISCO JAVIER RIVERA AGREDANO'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

**Honorable EMILY HEWITT, Judge Presiding**

TERESA TRUCCHI SBN# 135543
SUPPA, TRUCCHI, AND HENEIN, LLP
3055 India Street
San Diego, CA 92103
Telephone: (619) 297-7330
Telefax : (619) 297-9658

Attorneys for PLAINTIFF
FRANCISCO JAVIER RIVERA AGREDANO

November 12, 2007

**CONTENTIONS OF FACT**

The present action arises out of the purchase of an automobile at a U.S. Customs Service seizure auction by plaintiff FRANCISCO JAVIER RIVERA AGREDANO. (hereinafter "RIVERA").

As alleged in the operative complaint [see; also, Declaration of Francisco Javier Rivera Agredano, Pl. App. 9 and Declaration of Alfonso Calderon Leon, Pl. App. 10 filed 11-14-05]: RIVERA and CALDERON LEON are citizens of the United States of Mexico and are authorized to enter the United States to conduct business. Jose Armando Jimenez Coronel purchased and thereafter imported a 1987 Nissan Pathfinder (hereinafter SUBJECT VEHICLE) into Mexico on December 12, 2000. On or about January 25, 2001, Mr. Jimenez was arrested and the SUBJECT VEHICLE was seized by USA under 18USC545; 21 USC952; and 19CFR162.45(A) (for transportation of marijuana across the United States border.)[Dec. of Francisco Javier Rivera Agredano, Pl. App. 9; Dec. of Alfonso Calderon Leon, Pl. App. 10; Declaration of Lic. Carlos Mejia. Pl. App. 11 filed 11-14-05]

On January 30, 2001, Mr. Jimenez pled guilty to violation of California Health and Safety Code C2A711359 and admitted that he "knowingly possessed 59 pounds of marijuana for purposes of sale." In February, 2001, Mr. Jimenez was granted probation for three (3) years, sentenced to time served (39 days) and ordered to pay $400.00 in fines and restitution. In exchange, the balance of the charges against him were dismissed. [Declaration of Francisco Javier Rivera Agredano, Pl. App. 9; Declaration of Alfonso Calderon Leon, Pl. App. 10; Declaration of Lic. Carlos Mejia. Pl. App. 11 filed 11-14-05]

Thereafter the SUBJECT VEHICLE was made available for sale to the public through a Federal Forfeiture Sale. On September 5, 2001, RIVERA acquired the SUBJECT VEHICLE from

the Department of Treasury in a Public Auction following a Customs Service Department Federal Forfeiture Sale. [Declaration of Francisco Javier Rivera Agredano, Pl. App. 9; Declaration of Alfonso Calderon Leon, Pl. App. 10; Declaration of Lic. Carlos Mejia. Pl. App. 11 filed 11-14-05]

On Thursday, January 24, 02 RIVERA was traveling in the SUBJECT VEHICLE from the City of Ensenada, Baja California to the City of Tijuana, Baja California. RIVERA was accompanied by CALDERON. RIVERA and CALDERON were stopped at a Highway Check Point at the location known as El Sauzal, Ensenada, Baja California by Mexican authorities. [Cmp para. 16] The SUBJECT VEHICLE was searched. The Mexican authorities discovered twenty two (22) packages containing marijuana (weighing 17 kilograms total.) The packages were between the upholstery walls and the body of the vehicle (the wheel well.) [Declaration of Francisco Javier Rivera Agredano, Pl. App. 9; Declaration of Alfonso Calderon Leon, Pl. App. 10; Declaration of Lic. Carlos Mejia. Pl. App. 11 filed 11-14-05]

RIVERA and CALDERON were arrested and were in Federal Prison in Mexico from and after January 24, 2002 until their release on January 10, 2003 (upon a finding of innocence). Jose Blanco Loya, an expert witness from the Office of the Attorney General (in Mexico), tested the marijuana on January 25, 2002. On February 13, 2002, Mr. Blanco testified before the 11th Federal District Court of Ensenada that the marijuana found by the Mexican authorities on January 24, 2002 was "highly dehydrated, consistency and texture had been lost, and due to color lost, it had a 'brownie' color trend .... change in texture and consistency is also due to they (sic) have been stored or exposed to certain physical or atmospherical conditions, change in color is due to an old or stored marijuana..” [Declaration of Lic. Carlos Mejia. Pl. App. 11 filed 11-14-05]

On March 11, 2002, expert chemists Rafael Garcia Guterrez and Miguel Carrillo Mendivil, qualified as experts in the Federal Court, testified as follows: "(the marijuana) is highly dehydrated,

it has a brownie color ... it is observable that is marijuana that has been stored for a long time and not only that, at opening a 'rotten' odor comes from the packages.... it is assumed that such illegal drug was exposed to adverse atmospherical and physical conditions for a long time." [Declaration of Lic. Carlos Mejia. Pl. App. 11 filed 11-14-05]

Thereafter, in a response to a Freedom of Information Act request filed by plaintiffs' counsel, photographs were produced by CUSTOMS showing that the area wherein the Mexican officials discovered the marijuana in January of 2002 had not been searched by USA prior to the sale to RIVERA. [see; also, Declaration of Francisco Rivera, Pl. App. 9 and Declaration of Alfonso Calderon, Pl. App. 10 filed 11-14-05]

Plaintiffs contend that the area wherein the Mexican officials discovered the marijuana in July of 2003 had not been properly searched by the USA despite a duty to do so. Plaintiffs contend that if the vehicle had been properly searched, the marijuana (in excess of 33 pounds) would have been detected. The plaintiffs contend that the failure to conduct a thorough search of the vehicle prior to sale was the result of an USA policy to curtail searches in order to avoid causing damage to seized vehicles during customs' inspections. The plaintiffs contend that the goal of curtailing the searches was to maximize the resale value of the vehicle at auction [Deposition of Jayson Ahern (6-4-04) pg. 5; ll. 7-11; pg. 50; ll. 1-25; pg. 51, ll 1-11; Pl. App. 1; Deposition of Robert Root (6-24-04) pg. 6; ll. 6-8; Pl. App. 2; pg. 30; ll. 2-8; Deposition of David Murphy (6-24-04) pg. 5; ll. 17-19; Pl. App. 3; pg. 9;ll. 25; pg. 10;ll. 1-5; Pl.App. 3; pg. 43; ll. 21-25; pg. 44; ll. 1-18; Pl. App. 3; Deposition of Officer Joseph Marilao (6-9-04) pg. 6; ll. 23-24; pg. 26; ll. 9-16; pg. 26; ll. 22-25 and pg. 27; ll. 1-4; Pl. App. 4; Deposition of Robert Bickers (6-9-04) pg. 6; ll. 21-22; Pl. App.; pg. 8; ll. 10-12; Pl. App. 5 pg. 26; ll. 3-17; Pl. App. 5 filed November 14, 2005]

RIVERA and plaintiff ALFONSO CALDERON LEON (hereinafter CALDERON) were thereafter imprisoned in Mexico as a result of the discovery of marijuana in the vehicle by Mexican authorities in Ensenada, Mexico. Plaintiffs contend that the marijuana was in the vehicle prior to the purchase but not removed by the U.S. Customs Service due to an intentional failure to conduct an adequate search of the vehicle.

## CONTENTIONS OF LAW

The failure to conduct a thorough search of the vehicle prior to sale was the result of an USA policy to curtail searches in order to avoid causing damage to seized vehicles during customs' inspections. The goal of curtailing the searches was to maximize the resale value of the vehicle at auction.

The fact that this duty to search existed, and was breached by the USA, is further evidenced by Michael Levine, Plaintiff's expert on the standards and policies of USA customs department. As set forth in the report of Mr. Levine, USA is required under its policies and procedures to search any automobile when there is probable cause to suspect narcotics to be hidden within the vehicle, and that the USA's search of the automobile was "significantly substandard and incomplete."

The USA conducted "reinspection" searches at the auction lot prior to the seizure sales for the specific purpose of ensuring that the vehicle did not still contain drugs at the time of the sale. The USA specifically foresaw that the failure to conduct this search in an adequate fashion could expose any future occupant to imprisonment, possibly in Mexico. The pre-auction "reinspection" searches were for the specific purpose of protecting any future occupants of the vehicles from the possibility of a wrongful arrest.

On January 23, 2007, Lawrence Fanning, the Assistant Director of Field Operations, testified that the pre-auction "reinspection" searches were for the purpose of protecting the purchaser and any other occupant from the risk of imprisonment that could occur should they be in the vehicle at a time that any inadvertently overlooked narcotics were discovered by law enforcement (either in the USA or Mexico). Mr. Fanning testified that the USA was aware that the auctions were attended by many Spanish speaking individuals and that the vehicles purchased at the auction were sometimes taken to Mexico. Further testimony on the issues of foreseeability and intent to benefit all future occupants of the vehicles through the pre-auction "reinspection" searches was received from various other USA witnesses at their depositions.

Plaintiff contends that these facts entitle him to recover emotional distress damages. In a published ruling in this case issued on March 27, 2006, this Court found that the plaintiff was entitled to proceed on the causes of action for implied-in-fact warranty and breach of the implied covenant of good faith and fair dealing. Plaintiff Francisco Rivera was also allowed to proceed with his claim for emotional distress damages. In a similar case pending in the courtroom of Judge Charles Lettow (Rodriguez v. USA, 05CV370), Judge Lettow stated in a published decision issued January 30, 3006 that Ali Jazmin Rodriguez could also pursue a claim for emotional distress on these same causes of action.

______ A California Appellate Court (the jurisdiction where these sales occurred) issued a decision in a case called Luciano de la Hoya v. Slim's Gun Shop (1978) 80 Cal.App.3d Supp. 6 that arose from strikingly similar facts. The de la Hoya court based its rationale, in part, upon Section 2714 and 2715 of the Uniform Commercial Code [Id., at ftnt. 3]. In the de la Hoya case, the principal issue was whether an innocent buyer of personal property which turns out to have

been stolen can recover as damages, from a seller, attorney's fees incurred in defending himself against criminal charges arising out of possession of the stolen property. The de la Hoya Court found that he could. [Id., at page 7]

The de la Hoya Court concluded that when a party becomes embroiled in litigation with third persons as a result of the defendant's breach of contract, that he or she may recover the attorney fees incurred in defending against the action as an element of damages. [Id., at page 9] The Court considered cases decided in Oklahoma and Utah and stated: "It appears to be the general rule in those United States jurisdictions which have considered the problem that attorneys fees incurred in litigation with third parties may be recoverable as damages in an action for breach of contract." [Id.., at page 10]

The Court then noted that in the de la Hoya case, the appellant argued that attorney fees expended in extricating respondent from his arrest were not proximately caused and should not be allowed. The de la Hoya court disagreed. [Id., at page 10] Citing to the California Supreme Court case of Weaver v. Bank of America (1963) 59 Cal2d 428, the de la Hoya court concluded that it could not be found as a matter of law that the intervening arrest was so remote a possibility that the (defendant) could not have reasonably foreseen it. [Luciano de la Hoya v. Slim's Gun Shop, supra, 80 Cal.App.3d Supp. 6 at page 11]

"The risk of the arrest ... does not depend upon any special circumstances unknown to (the defendant); it is not so remote a contingency that this court could hold as a matter of law that it would have been unreasonable for the parties to consider it ... In the case at bench the trial court has impliedly found ... that the parties could reasonably have contemplated at the time appellant sold the hand gun to respondent that if respondent's possession of it was questioned,

and the gun turned out to be stolen, respondent would be subject to arrest for receiving stolen property ... Once the foreseeability of arrest is established a natural and usual consequence is that appellant would incur attorneys's fees." [Id. At page 11]

The issue of whether or not these parties have a right to sue the USA under this general fact pattern was examined by the Ninth Circuit Court of Appeals in another similar case entitled Jose Cervantes v. USA [United States District Court Number 01CV0128K(LSP)].

***CERVANTES V. USA***

In 1999, 67 year old Jose Cervantes was arrested by US Custom officials as he waited in line at the border crossing at Otay Mesa, CA to deliver a passport to his grandson (who was on a field trip to the USA). Mr. Cervantes stayed in jail in from October 22, 1999 until his release on February 9, 2000. [Cervantes v. USA 330 F.3d 1186 (9th Cir. 2003)] Mr. Cervantes purchased the vehicle he was driving at the time of his arrest from the USA at a USA custom forfeiture seizure sale. The marijuana found in his car was eventually determined to have been left in the vehicle at the time of the sale. [Cervantes v. USA, supra at 1188]

The USA moved to dismiss the complaint based, in part, on the "detention of goods" exception to the FTCA found at 28 USC 2860(c). The motion to dismiss was granted by the trial court. On June 2, 2003, the 9th Circuit Court of Appeal reversed in a published opinion that states: "In asserting the detention of goods exception as its defense, rather than compensating a plaintiff it has seriously wronged, the United States thumbs its nose at its obligation to see that justice is done. The Supreme Court long ago pronounced the special obligation of the United States Attorney to serve the interests of justice: 'The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern

impartially is as compelling as its obligations to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done ...[He] is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.' [citing Berger v. United States 295 U.S. 78, 88 (1935)] ' In asserting a last-ditch, far-fetched defense in this case, the United States Attorney failed to meet this obligation. We trust that this is but a momentary lapse." [Cervantes, supra, 1190-1191]

***RODRIGUEZ v. USA ET. AL.***

There is another similar case pending in this court in front of the Honorable Judge Lettow. The complaint in Rodriguez v. USA (United States Court of Federal Claims Number 05-370c)][see; also, Declaration of Ali Jazmin Rodriguez Rivera, Pl. App. 7 and Declaration of Adrian Rodriguez, Pl. App. 8] alleges as follows: On March 3, 03, Ali Jazmin Rodriguez and Adrian Rodriguez (husband and wife) purchased a Volkswagen Passat at an auction conducted by EG&G for the Department of Homeland Security of the UNITED STATES OF AMERICA [Complaint, paragraph 16].

On July 17, 2003, Adrian Rodriguez took the vehicle to a mechanic in Tijuana because it was making an unusual sound. The vehicle was found to have 33 pounds of marijuana in a box on the underside of the body. Upon discovery of the marijuana, Adrian Rodriguez asked the mechanic to call the police. The Tijuana police arrived and Adrian Rodriguez was arrested. [Complaint, paragraphs 17-18] Adrian Rodriguez was in Federal Prison in Mexico from and after July 17, 2003 until August 15, 2003 when he was released. [Complaint, paragraphs 17-22]

In Pratt v. United States 50 Fed. Cl. 469 (2001) at pg. 478 and FN6, the Court found that the plaintiff could state a cause of action for breach of contract; breach of the implied covenant of good faith, id., at 479-480; and was entitled to seek reimbursement of attorney fees as damages, id., at 482-483.

The Pratt court further stated: "A claim for tortious breach of contract, in contrast, is not a tort independent of the contract so as to preclude Tucker Act jurisdiction (citations omitted). This is true regardless of whether the loss resulted from the negligent manner in which the government performed the contract (citations omitted) although it is not enough that the conduct is merely related in some general sense to the contractual relationship of the parties (citations omitted) For jurisdictional purposes, the tortious conduct must specifically relate to a contractual obligation." [Pratt v. USA 50 Fed.Cl. 469, 480-481]

In Pratt, the court ultimately found that there was no connection between the USA's conduct during subsequent litigation and the contractual obligation initially owed to plaintiff. This is not the case in the instant matter. In the instant matter, the obligation to search the vehicles in a reasonable fashion was an integral component of the contract for sale to the plaintiffs as well as the contract between the USA and EG&G to conduct the seizure sales.

In this case, the USA had a contractual obligation and regulatory duty to conduct a thorough search of seized vehicles before selling the same to plaintiff. The obligation to conduct a thorough search of the vehicle was breached. The breach occurred for the express purpose of increasing the USA's gain in the subsequent commercial transaction with plaintiffs. The USA did not notify potential purchasers that the vehicles had not been thoroughly searched as part of the seizure and sale preparations.

This lack of disclosure increased the value of the vehicles for the USA (as the vehicles were not damaged by the search) to the detriment of the purchaser (who were not aware that the reason for the marketable state of the vehicle was an inadequate search for contraband). This conduct rises to the level required under Franklin Savings Corp. v. USA 56 Fed.Cl. 7, 746 (03) to support a claim for violation of the covenant of good faith and fair dealing by the USA.

The damages sustained are also foreseeable. The purpose of searching the vehicle before a sale to the general public is obviously to ensure that the vehicle is not released into the stream of commerce to an unwitting purchaser while it is still full of a substantial amount of drugs. The only forseeable harm that would come to the purchaser should the vehicle not be searched would be detention and arrest by the authorities if the drugs are thereafter discovered. It is very foreseeable that these vehicles will be driven to Mexico. In fact, in each case discussed above, Mexico was involved: the first case, Cervantes, the vehicle was sold to a Mexican National and he was arrested when he tried to come back into the USA. In the Rodriguez v. USA case, Adrian Rodriguez (an USA citizen) was arrested when he took the vehicle into Tijuana for repairs. In this case, the vehicle was sold to a Mexican national. It is foreseeable that a person will drive around in a vehicle that he or she purchased in one of these auctions. As such, it is not reasonable to conclude that, as a matter of law, it is not foreseeable that the purchaser of a vehicle still containing drugs at an USA government auction near the border will be arrested in Mexico after driving the vehicle over the border to return home.

In support of the contention that the damages sustained by plaintiffs are speculative as a matter of law , the USA has cited the case of SAB Construction v. USA 66 Fed.Cl. 77. In this case, the purchaser of real estate claimed that the USA failed to disclose asbestos and that the

presence of asbestos might expose the purchaser to loss in the future. The plaintiff sought reimbursement of litigation costs incurred in a separate action against the project's design contractor. The court found that since no injury related to the asbestos had occurred and as it was the plaintiff's choice to instigate the related civil action, damages against the USA were speculative. [Id., at 88] In contrast, in the present case, the plaintiffs were injured and their need to incur legal fees to obtain their freedom in the Mexican criminal action was not at their election. As such, the holding in SAB Construction does not bar the instant case as a matter of law.

The UNITED STATES has argued that its one-page, unsigned "Notice to Potential Bidder" creates an "as-is" contract with Plaintiffs that binds them to accept the Pathfinder with 37 pounds of marijuana hidden inside and bars Plaintiffs from recovery in the present action. This argument is not supported by law or fact. An "as is" provision does not relieve a seller of all responsibility of disclosure. Instead, it is a factor to be considered with all other circumstances in determining whether the buyer has been misled or the seller is in breach. The Pratt v. USA 50 Fed.Cl. 469, 479 court found that the mere existence of a risk of loss disclaimer does not excuse the Government from the implied obligation to act in good faith and to deal with purchasers fairly.

In the case of Solar Turbine v. USA 26 Cl.Ct. 1249, 1273 the court discussed Section 2-313 of the Uniform Commercial Code and found that an affirmation of fact can create a warranty where the affirmation is "part of the basis of the bargain" in that it was made in the course of negotiating the agreement.

Plaintiff contends that these facts show that these sales, presented as US forfeiture sales, created an affirmation of fact that would lead the reasonable purchaser to believe that the vehicles had been adequately searched prior to the sale (or at least that the search was not intentionally

limited to increase the USA's profits). Plaintiffs were reasonable to presume that the USA performed a proper search of the vehicle as this was required by its own policies and procedures.

As admitted by the USA expert, David Murphy, if the search had been adequate, an amount equal to 37 pounds would have been detected:

Q: So in your opinion if those search techniques are performed adequately, an amount of that size, i.e., around 37 pounds, would be detected?
A: Yes."

[Deposition of David Murphy (6-24-04) pg. 43; ll. 21-25; pg. 44; ll. 1-18; App. 3]

. Furthermore, a careful reading of the Notice indicates that it address warranties of title, identity, physical condition and registration status. Nowhere does it advise the buyer that these vehicles could still have significant amounts of narcotics hidden within them, and that the purchase knowingly agrees to accept the vehicle despite this fact. This was not communicated to Francisco Rodriguez (or any of the other individuals injured by this same problem)[Dec. of J. RODRIGUEZ, Pl. App. 7; Dec. of A. Rodriguez, Pl. App. 8; Dec. of RIVERA, para. 13-16, Pl. App. 9; Dec. of CALDERON, para. 12-15, Pl. App. 10] at the time of the sale.

The Pratt v. USA case (supra, 50 Fed. Cl. 469 at 481) provides further support for the finding that scope of the "as-is" provision in the unsigned brochure does not preclude damages in this case: “Defendant cites no authority for the proposition that the existence of disclaimers precludes a party from making affirmative misrepresentations. As with the breach of contract claim, the issue here is whether any alleged misrepresentations fell within the scope of the disclaimers ... [The contract] contained positive, but erroneous representations upon which plaintiff in fact relied ... That those erroneous "positive representations" were that defendant had taken certain actions prior to contract formation (parenthetically, a not unusual situation) is

plainly no defense to an action for breach of contract based upon misrepresentation (citing Summit Timber v. USA 230 Ct. Cl. 434 at 440-41)"

In the present case, despite the language in the Notice that the vehicles are sold "as-is where is," this is actually not the case: the UNITED STATES has in fact implemented policies and procedures for searching the vehicles and failed to follow them, which is not within its discretionary function. The United States Supreme Court has repeatedly scrutinized the exercise of the United States discretionary function, and finds that while United States' enactment of a policy or procedure may have been discretionary, its performance under that act is not.

In the deposition testimony of Jayson Ahern, Mr. Ahern testified that USA is required by its rules and regulations to perform a complete and thorough search of the vehicle. Further, the "as-is where is" warranty is clearly meant to refer to the mechanical condition of the vehicles and issues related to title. A warranty in this situation would not relieve the USA Border patrol officials from their mandatory duty to conduct a thorough inspection on the vehicle before it was released to the general public in an auction sale.

The USA had a policy to conduct searches for the purposes of ensuring that the vehicles were reasonably clear of contraband before they were sold. A purchaser at a USA seizure sale would be reasonable if he or she were to presume that the vehicle had been completely inspected. This belief is reasonable because of the representation that this is a USA forfeiture sale. When the USA then decided to limit searches for the purpose of increasing resale value of the vehicle, but did not disclose this policy to the purchaser, a material misrepresentation of an implied-in-fact term of the contract occurred.

Accordingly, once the USA's policies and procedures for conducting searches of seized vehicles was determined, it was the USA's responsibility to see that they were followed with "constant vigilance." In this case, there was a determination by the officials in charge of conducting the searches to abandon those procedures in favor of a policy that placed maximizing profits over the safety of the individuals purchasing the seized vehicles.

As to the claim for warranty and a contract implied in fact, in the US Supreme Court case entitled Hatzlachh Supply Co. v. USA 444 U.S. 460, 465 the Court found that the absence of Government tort liability has not been thought to bar contractual remedies on implied-in-fact contracts, even in those cases also having elements of a tort: "Without more, neither the existence of a tort remedy nor the lack of one is relevant to determining whether there is an implied-in fact contract ..."

The USA has cited to the cases of Price v. United States 46 Fed. Cl. 640, 648 (2000); Knieper v. USA 38 Fed.Cl.128, 140 (1997) and Levy v. USA 10 Cl.Ct 602, 612-13 (1986) in support of their contention that the one page, unsigned "Notice to Bidder" precludes recovery in this case as a matter of law. None of these cases are on point with the instant matter.

In Price v. United States 46 Fed. Cl. 640, 648 (2000), the issue was whether the government disclosed issues related to code violations in connection with the sale of real property to Price. The Court found that the contract expressly discussed zoning issues and that the plaintiff had the means at his disposal to find out about the zoning issues himself (therefore, there was no justified reliance on anything the USA may have failed to disclose regarding zoning).

In this case, the one page unsigned "Notice to Bidder" is not effective as a disclaimer. Further, in this case, the plaintiff was justified in relying upon the fact that the vehicle had been

seized (and presumably searched) by the US border officials before being offered for sale to him.

In Knieper v. USA 38 Fed.Cl.128, 140 (1997), the plaintiff was seeking to rescind a contract based upon mutual mistake. Plaintiff claimed that he purchased real property under the mistaken belief that the property contained an operative well. The language cited by defendant USA from Knieper refers to a rescission claim, not a claim for breach. Further, in Knieper, there was a contract signed by both parties that expressly and thoroughly addressed the scope of the "as-is" provision in the contract. Finally, in Knieper (unlike the situation in the present case) there was no allegation that the USA had taken any steps to conceal the true state of the property from the purchaser or allowed the purchaser to develop incorrect assumptions regarding the state of the property at the time of the sale.

In Levy v. USA 10 Cl.Ct 602, 612-13 (1986), the issue was similar to the issue in Price, supra: the purchaser of real estate from the USA claimed that the real estate did not include a tennis court. However, as in Price, the purchaser could have obtained this knowledge from a review of the county land records (Levy, supra at page 612) and (unlike the present case) there was no indication that the USA possessed facts which were material to the bid and which the unsuspecting bidder neither knew nor should have known about at the time of the sale. [Levy, supra, at page 612] In the present case, the USA knew that the searches of the seized vehicles were inadequate in order to increase profits. Plaintiff contends that a bidder at a government forfeiture auction would not know that the USA was limiting its searches of vehicles in order to make additional profit in a subsequent commercial transaction with the purchaser.

As such, plaintiff will seek recovery for special and general damages, according to proof, as generally outlined at the end of this memorandum.

**WITNESSES:**

Francisco Javier Rivera Agredano. May be contacted through Teresa Trucchi. Plaintiff

Alfonso Calderon Leon May be contacted through Teresa Trucchi. This individual was imprisoned with plaintiff and with him at the time of the seizure of the Pathfinder by the Mexican officials

Carlos Mejia Lopez, Esq.;Av. Flores Magon (Calle 6ta.) No. 8119; Suite 305, Zona Centro Tijuana, Baja California (664)685-61-68. Lic. Mejia represented Sr. Rivera and Sr. Calderon in the Mexican criminal proceedings

Chemist/expert for Mx. Attorney General in criminal case in Mexico/expert and percipient

Jose Blanco Loya; Ave. Aldama #480; Zona Centro (Downtown area); Ensenada, Baja California, Mexico. This individual has knowledge of the state of the marijuana discovered in the vehicle.

Chemist engineer and Sciences Doctor/expert for defense in Mexico/expert and percipient

Rafael Garcia Guterrez; Arizona State University; Rural at University; Tempe AZ, 85287; (480) 965-5767. Mexican address: Colinas de la Giganta #151; Fracc. Colinas del Mar; Ensenada, Baja California, Mexico. This individual has knowledge of the state of marijuana discovered in the vehicle.

Chemist pharmaceutical and biologist/expert for defense in Mexico/expert and percipient

Miguel Carrillo Mendivil; Lago Xochimilco #562; Ensenada, Mexico. This individual has knowledge of the state of marijuana discovered in the vehicle

Jose Jimenez Coronel – address unknown – This individual has knowledge regarding the original USA seizure of the vehicle involved in the arrest of Sr(s). Rivera and Calderon and was convicted of transporting marijuana in the Pathfinder in the USA.

Teresa de Jesus Rivera Agredano may be contacted through Teresa Trucchi. This individual has knowledge of the emotional damages and economic losses sustained by plaintiff

Gabriel Calderon Leon may be contacted through Teresa Trucchi. This individual has knowledge of the emotional damages and economic losses sustained by plaintiff

Carmen G. Rivera Calderon may be contacted through Teresa Trucchi. This individual has knowledge of the emotional damages and economic losses sustained by plaintiff

Various family members and associates of Alfonso Calderon and Francisco Rivera (may be contacted through claimant's counsel); Teresa de Jesus Rivera Agredano; Gabriel Calderon Leon; Eduardo Calderon Leon; Roberto Calderon Leon; Carmen G. Rivera Calderon; Martha Calderon Leon; Ma. del Carmen Calderon Leon; Jose A. Calderon Leon; Irma Yolanda Calderon Leon; Paulina Lizeth Rivera Calderon; Maria Elena Leon Torres; Araceli Calderon Leon; Mariana Calderon Leon, Monica Calderon Leon, Angelina Rivera Agredano; Alejandra Rivera Agredano; Ruben Perez Pina; Ruben Perez Calderon, Oscar Jesus Armenta Garcia; Marco Calderon Hernandez; Iran Castro Parra; Yolanda Gabriela Perez Calderon; Elizabeth Rivera; Jose A. Mendez Rivera; Pablo Alberto Navarro Rivera; Nohemi Pinon Rivera These individuals have knowledge of the emotional damages and economic losses sustained by plaintiff

Adrian Rodriguez and Ali Jazmin Rodriguez; contact through Teresa Trucchi; 3055 India Street; San Diego, CA 92103. These individuals have knowledge of a similar type of event involving a Volkswagon Passat vehicle purchased at a custom's auction

Rosa Elena Olivera Alonso; contact through Teresa Trucchi; 3055 India Street; San Diego, CA 92103 This individual has knowledge of a similar type of event involving a vehicle purchased at a custom's auction

Evangelina Alonso; contact through Teresa Trucchi; 3055 India Street; San Diego, CA 92103

Isabel Gonzalez; contact through Teresa Trucchi; 3055 India Street; San Diego, CA 92103

Lic. Fernando Benitez Alvarez del Castillo; Mission de Santo Tomas No. 1515, Zona Rio; Tijuana, B.C.22420. Attorney for Adrian Rodriguez in the Mexican criminal action

Lic. Jose Miguel Ramirez Bilbao; Netzahualcoyotl 1211; 2do. Piso Desp.4; Zona Rio Tijuana, C.P. 22320 Attorney for Adrian Rodriguez in the Mexican criminal action

Lic. Adrian Sanchez Bolanos; Mission de Santo Tomas No. 1515, Zona Rio; Tijuana, B.C.22420 Attorney for Adrian Rodriguez in the Mexican criminal action

Rep. Bob Filner This individual assisted in arranging for the release of Adrian Rodriguez

Treating physicians for plaintiff in Mexico

Dr. Hector Santillana; Centro Medico de Tijuana; Col. Gabilondo; Tijuana, Mexico; (664) 686-53-18

Miguel A. Lizarraga Velazquez, M.D.; Calle 3ra #7283 Altos 3; Z.C. Tijuana B.C. Mexico; (664) 685-26-14

Ma. Alba Moreno Grijalva; Ave. Rocio #631 Secc. Jardines; Playas Tijuana B.C. Mexico; (664) 631-83-80

Jesus Manuel Cesena Caro, M.D.; 10606-406 Zona Rio; Tijuana, B.C. Mexico; (664) 634-27-31

**PLAINTIFF'S CUSTOMS PROCEDURES/STANDARD OF CARE/CAUSATION**

Michael Levine; P.O. Box 533; Stone Ridge, New York 12484; (845) 687-9642

The following individuals are employees of the Defendant United States

Jayson Ahern This individual has knowledge regarding the procedure for seizures and other matters related to the Border and Custom policies and procedures relevant in this case.

Robert Root This individual has knowledge regarding the procedure for seizures and other matters related to the Border and Custom policies and procedures relevant in this case

Robert Hood This individual has knowledge regarding the procedure for seizures and other matters related to the Border and Custom policies and procedures relevant in this case

David Murphy This individual has knowledge regarding the procedure for seizures and other matters related to the Border and Custom policies and procedures relevant in this case

Lawrence Fanning This individual has knowledge regarding the procedure for seizures and other matters related to the Border and Custom policies and procedures relevant in this case

Joseph Marilao This individual has knowledge regarding the procedure for seizures and other matters related to the Border and Custom policies and procedures relevant in this case This individual was involved in the seizure in the Rivera/Calderon case

Robert Bickers This individual has knowledge regarding the procedure for seizures and other matters related to the Border and Custom policies and procedures relevant in this case

Armando Sedano Nunez; address presently unknown – This witness may have knowledge of the events surrounding the original seizure of the Adrian Rodriguez vehicle.

Yolanda Corona de Nunuz; address presently unknown – This witness may have knowledge of the events surroundging the original seizure of the Adrian Rodriguez vehicle.

Daniel Sevilla Mercado; address presently unknown Israel Gomez Romo; Jose Luis Molina Magana; Lorena Blanco; Oscar Preciado

Jose Cervantes may be contacted through attorney Steve Estey. This individual has knowledge of a similar event involving contraband left in a vehicle seized and sold at an USA auction

All individuals as identified in Defendant USA's Initial Disclosure

**Plaintiffs identify the following documents, and other items, which may be used to support their allegations herein:**

1. Claims and Supplemental Claims by plaintiffs and attachments thereto
2. Investigative reports
3. Medical records from treating physicians and health care providers
4. Medical bills from treating physicians and health care providers
5. Documents as contained in volumes one, two, and three of documents as previously submitted to USA counsel. (TOMO ONE, TOMO TWO, TOMO THREE)
6. Criminal records from case in Mexico (already provided to opposing counsel)
7. Photographs of the marijuana, Pathfinder and Passat
8. Photographs and films taken by news crews of plaintiff and family during imprisonment
9. Records relating to the purchase, title, sale, and registration of the Pathfinder
10. Documents relating to the seizure and sale of the Pathfinder
11. Contracts among the defendants regarding the auctions
12. Directives regarding the procedure to utilize for searches and subsequent sales of seized vehicles
13. Directive regarding the re-search of seized vehicles issued in 2003 by the Department of Homeland Security.
14. Chemist reports and analysis
15. Criminal records of Jose Jimenez Coronel
16. Documents relating to the imprisonment of Jose Cervantes

17. Mexican criminal documents relating to the imprisonment and release of Adrian Rodriguez

18. Documents relating to lost income of Francisco Javier Agredano Rivera

19. Documents attached to defendant USA's Motion for Summary Judgment in the Rodriguez v. USA and the Rivera (et. al.) v. USA case

19. Records relating to the purchase, title, sale, and registration of the Nissan Pathfinder

20. Documents relating to the seizure and sale of the Nissan Pathfinder

21. Contract between EG&G and USA to conduct auction

22. Written policies and procedures of USA as produced in discovery in the underlying action

23. All documents produced in discovery by EG&G in the District Court action

24. All documents produced in discovery by USA in the District Court action or in response to plaintiff's FOIA requests.

25. All documents produced in discovery by plaintiffs in the District Court actions

26. Bill for legal services provided by counsel in criminal proceedings in Mexico

27. Photographs from Mexican civil action of marijuana found in Pathfinder

28. Plaintiff's counsel's FOIA requests and the USA's responses thereto

29. Calimax correspondence and invoices

30. Documents to import the Pathfinder in Mexico

31. Factual findings by chemists for the criminal court in Mexico

32. Documents from the case of Cervantes v. USA case

33. Documents from the People of CA v. Jose Armando Jimenez criminal case

34. 5-30-03 Letter from counsel for EG&G and attachments thereto

35. JUDGMENT/SENTENCE – ENSENADA

36. JUDGMENT/SENTENCE ON APPEAL

37. JUDGMENT/SENTENCE – MEXICALI

38. Income tax and income documents produced by Francisco Rivera to USA

Re: lost earnings

39. All documents and other items listed by the Defendant USA in the initial disclosure served by the USA in this action

**INFORMATION RELATING TO DAMAGES**

Date of Arrest – January 24, 2002

Date of Release – January 10, 2003

Days in captivity – 351 days

1. Lost wages

   Age: DOB 10-15-62

2.. Psychiatric bills

   Diagnosis – Major depressive reactive disorder, post traumatic stress disorder, agoraphobia, claustrophobia, autonomous nervous system disorder, suicidal idealation

3. Medical Bills – Prior to incident – good health, no drugs or alcohol

Medical conditions caused by incident: Peripheral vascular insufficiency, tachycardia, cardiac and thoracic pain, migraine headaches, recurrent pharyngealtonsillitis, dermatitis, high blood pressure, insomnia, dental, arthritis in knees, shoulder and arm, gastroenteritis and digestive problems including nausea, heartburn, diarrhea, pain, problems with his eyes – light sensitivity,

tearing, burning and conjunctivitis, edema of the lower extremities, recurring respiratory infections, breathing difficulties (SOB), weight gain, skin abrasions and infections, neurological problems in his arms and legs, injury to shoulder (rotator cuff) when he was arrested, skin rashes and irritation causing constant itchiness on his arms and legs, sexual dysfunction, recurrent infection in his right ear

4. Value of Pathfinder – est. $3,500
5. Loss of use of Pathfinder
6. Attorney fees – Mexico – Carlos Mejia Lopez
7. Interpreter fees – Mexico
8. Attorney fees – USA

   Prior to litigation (to assist with obtaining release)

   Litigation (statutory)

9. Litigation costs -- to date -- approximately $25,000.00
10. Emotional Distress
    Imprisoned 351 days
    Serious residual psychological issues
    Life long medical complications
    Sexual dysfunction

Respectfully Submitted

DATED: November 12, 2007

SUPPA, TRUCCHI & HENEIN, LLP
s/Teresa Trucchi
By: TERESA TRUCCHI
Attorneys for Plaintiffs
3055 India Street
San Diego, CA 92103
Telephone: (619) 297-7330
Telefax : (619) 297-9658

**CERTIFICATE OF ELECTRONIC FILING**

This document and all attachments was electronically filed on November 12, 2007 and served on opposing counsel electronically.

.DATED: November 12, 2007

SUPPA, TRUCCHI & HENEIN, LLP
s/Teresa Trucchi
By: TERESA TRUCCHI
Attorneys for Plaintiffs

SUPPA, TRUCCHI, AND HENEIN, LLP
3055 India Street
San Diego, CA 92103
Telephone: (619) 297-7330
Telefax : (619) 297-9658