No. 05-608C
(Judge Hewitt)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

FRANCISCO JAVIER RIVERA AGREDANO,

Plaintiffs
v.

THE UNITED STATES,

Defendant.

---

**DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

---

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

PATRICIA M. McCARTHY
Assistant Director

DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel. (202) 616-0170
Fax. (202) 514-8624

December 18, 2007

Attorneys for Defendant

# TABLE OF CONTENTS


TABLE OF AUTHORITIES . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . 1

DEFENDANT'S CONTENTIONS OF FACT . . . . . . . . . . 4

I. Contentions Of Fact Regarding The Search Of The Vehicle . . . . . . . . . . 4

II. Contentions Of Fact Regarding The Sale Of the Vehicle . . . . . . . . . . 4

III. Contentions Of Fact Regarding The Plaintiff's Arrest And Incarceration . . . . . . 6

IV. Contentions Of Fact Regarding The Preservation Of The Vehicle And The Marijuana . . . . . . . . . . 7

V. Contentions Of Fact Regarding Plaintiff's Allegation That Customs Had Policy Of Purposefully Curtailing Searches Of Seized Vehicles . . . . . . . . . . 8

VI. Contentions Of Fact Regarding Plaintiff's Alleged Damages . . . . . . . . . . 9

A. Lost Income . . . . . . . . . . 9

B. Medical Expenses . . . . . . . . . . 9

C. Psychiatric Expenses . . . . . . . . . . 10

D. Attorney Fees . . . . . . . . . . 10

E. Other Claimed Damages . . . . . . . . . . 12

ISSUES OF FACT AND LAW TO BE RESOLVED BY THE COURT . . . . . . . . . . 13

I. Issues of Fact . . . . . . . . . . 13

II. Issues of Law . . . . . . . . . . 13

DEFENDANT'S CONTENTIONS OF LAW . . . . . . . . . . 14

I. Law Regarding Liability . . . . . . . . . . 14

A. Implied In Fact Warranty . . . . . . . . . . 14

B. Good Faith And Fair Dealing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

C. Superior Knowledge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

II. Law Regarding Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

III. Response To Plaintiff's Legal Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

OBJECTIONS TO PLAINTIFF'S WITNESS AND EXHIBIT LISTS . . . . . . . . . . . . . . . . . . . . 27

I. Objections To Plaintiff's Witness List . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

II. Objections To Plaintiff's Exhibit List . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

BIFURCATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

## TABLE OF AUTHORITIES

**CASES**

Alston v. Fleetwood Motor Homes of Ind., Inc.,
480 F.3d 695 (5th Cir. 2007) . . . . . 23

Baltimore & Ohio R. Co. v. United States,
261 U.S. 592 (1923) . . . . . 15

Bohac v. Dep't of Agric.,
239 F.3d 1334 (Fed. Cir. 2001) . . . . . 22

Centex Corp. v. United States,
395 F.3d 1283 (Fed. Cir. 2005) . . . . . 18

Cervantes v. United States,
330 F.3d 1186 (9th Cir. 2003) . . . . . 26, 27

Crisci v. Sec. Ins. Co. of New Haven, Conn.,
426 P.2d 173 (Cal. 1967) . . . . . 22

de la Hoya v. Slim's Gun Shop,
80 Cal. App. 3d Supp. 6 (1978) . . . . . 24

Fiske & Co. v. United States,
23 Cl. Ct. 200 (1991) . . . . . 15

Franklin Savings Corp. v. United States,
56 Fed. Cl. 720 (2003) . . . . . 25-26

GAF, Inc. v. United States,
932 F.2d 947 (Fed. Cir. 1991) . . . . . 19-20

Girling Health Sys., Inc. v. United States,
22 Cl. Ct. 66 (1990) . . . . . 15

Hatzlachh Supply Co. v. United States,
444 U.S. 460 (1980) . . . . . 27

Hercules, Inc. v. United States,
516 U.S. 417 (1996) . . . . . 15, 16, 20

Hercules, Inc. v. United States,
24 F.3d 188 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 20-21

Int'l Data Prods. Corp. v. United States,
492 F.3d 1317 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Kewin v. Mass. Mut. Life Ins. Co.,
295 N.W.2d 50 (Mich. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Pratt v. United States,
50 Fed. Cl. 469 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Rivera-Agredano v. United States,
70 Fed. Cl. 564 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16, 18, 19, 25, 26

Rivera Agredano v. United States,
76 Fed. Cl. 315 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Rodriguez v. United States,
69 Fed. Cl. 487 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 26

Stanback v. Stanback,
254 S.E.2d 611 (N.C. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Stewart v. Rudner,
84 N.W.2d 816 (Mich. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Solar Turbine v. United States,
26 Cl. Ct. 1249 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Wise v. Gen. Motors Corp.,
588 F. Supp. 1207 (W.D Va. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Wm. T. Thompson Co. v. United States,
26 Cl. Ct. 17 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| FRANCISCO JAVIER RIVERA AGREDANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-608C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Pursuant to paragraph 14(b) of Appendix A of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits the following memorandum of contentions of fact and law regarding the claims of plaintiff, Francisco Javier Rivera Agredano.

## INTRODUCTION

The plaintiff alleges that, after purchasing a 1987 Nissan Pathfinder at a Government forfeiture auction sale on September 5, 2001, he was stopped by Mexican police, who searched the vehicle and found 17 kilograms of marijuana concealed within the car. The police then arrested the plaintiff and sent him to prison in Mexico for nearly a year. The plaintiff alleges that the Government left the marijuana in the car as a result of an inadequate search of the vehicle to remove contraband, that the Government's failure in this regard constitutes a breach of contract, and he has suffered "damages including, but not limited to, loss of liberty, pain and suffering, physical injuries, lost wages, loss of future earning capacity, emotional distress, mental anguish, property damages, and other general and special damages in an amount to be established at trial." Complaint ("Cmplt.") at 14.

Early in this case, the defendant filed a combined motion to dismiss and for summary judgment. The Court denied the motion in large part in an order dated March 27, 2006, and, in doing so, established a framework of issues for trial. Specifically, with respect to liability, the Court distilled the plaintiff's claim into three alternative legal theories: (a) the Government breached an implied-in-fact warranty to search the automobile prior to the sale; (b) the Government breached the implied covenant of good faith and fair dealing when it purposefully curtailed searches of seized automobiles in order to artificially inflate the prices obtained for those vehicles at auction; or (c) the Government withheld its superior knowledge about either the fact that a search of the vehicle occurred or the quality of the search that occurred. Rivera-Agredano v. United States, 70 Fed. Cl. 564 (2006). With respect to damages, the Court held that the foreseeability of the plaintiff's claimed damages was a factual question appropriately resolved at trial, and invited further briefing from the parties at an unspecified future date upon the issue of whether the contract for the sale of the 1987 Nissan Pathfinder was the type of contract that would support an award of emotional distress damages.

The plaintiff's pretrial memorandum does not contain all the items required by the Court's rules. It contains no discussion of the specific facts or legal questions the plaintiff believes need to be resolved at trial. Additionally, there are many factual and legal issues suggested by the Court in its March 27, 2006 order that the plaintiff does not address in its pretrial memorandum. Therefore, formulating our response has been difficult, and we eventually concluded that it would be most efficient to not only address the defendant's contentions and responses to the plaintiff's contentions, but also set forth what the plaintiff is required to prove at trial in this case.

The plaintiff bears the ultimate burdens of production, persuasion, and proof at trial regarding his breach of contract claim, under any and all of the theories he wishes to argue. If anything, the Government will be required to demonstrate that it performed an adequate and proper search of the 1987 Nissan Pathfinder prior to the September 5, 2001 sale to the plaintiff. This demonstration is only required, however, if the plaintiff first establishes a prima facie case that the contract for the sale of the 1987 Nissan Pathfinder contained an implied-in-fact term or warranty obligating the Government to conduct such a search. Additionally, if the plaintiff is able to establish that the Government engaged in a practice of restricting automobile searches to increase the auction prices of those automobiles, the Government may be required to put on rebuttal evidence. Aside from this, the Government contends that it does not bear any burden of proof in this case.

With respect to the plaintiff's case for liability, the Government contends that the plaintiff will not be able to meet his evidentiary burden to demonstrate that an implied-in-fact warranty to search the car existed between the parties, or that the Government was purposefully curtailing its searches of seized vehicles in order to increase the prices of the cars sold at auction. We also contend that the doctrine of superior knowledge does not apply to this case as a matter of law.

With respect to the plaintiff's case for damages, the evidence the plaintiff has provided to date regarding his economic damages has been thin at best, and he has firmly maintained that he is entitled to recover millions of dollars in emotional distress damages.

DEFENDANT'S CONTENTIONS OF FACT

I. Contentions Of Fact Regarding The Search Of The Vehicle

On January 25, 2001, the United States Customs Service ("Customs") (now United States Customs and Border Protection) stopped a 1987 Nissan Pathfinder at a border patrol facility near the United States border with Mexico as the 1987 Pathfinder was traveling north into the United States. An initial canine search of the 1987 Nissan Pathfinder indicated the potential presence of illegal narcotics concealed in the fuel tank of the vehicle. Customs immediately removed the vehicle to a secondary searching area, where it thoroughly searched the vehicle. This search revealed 40 packages of marijuana with a total weight of 59.5 pounds concealed in the vehicle's fuel tank. The packages were made of cellophane wrapping and adhesive tape, and they were vacuum-sealed. Customs agents arrested the driver and seized the 1987 Nissan Pathfinder.

After seizure, the 1987 Nissan Pathfinder was scheduled to be sold at public auction. To prepare it for auction, Customs searched the vehicle again, using canine search techniques as well as a human "seven-point" search, both of which were reasonably calculated to be thorough and discover any remaining contraband hidden in the vehicle. No additional contraband was discovered.

II. Contentions Of Fact Regarding The Sale Of the Vehicle

On September 5, 2001, the plaintiff purchased the 1987 Nissan Pathfinder at a public forfeiture auction, conducted by Government contractors EG&G, Inc. ("EG&G") (who directed and organized the forfeiture sale) and McCormack Auction Company ("McCormack") (who actually conducted the auction). The plaintiff purchased the 1987 Nissan Pathfinder for $2,600.

At the auction, there was no contact between the plaintiff and any Federal employee,

much less an individual authorized to negotiate binding contracts on behalf of the United States. There was no contact between the plaintiff any employee from either EG&G or McCormack, except two instances where the plaintiff (a) registered to participate in the auction, and (b) paid for the 1987 Nissan Pathfinder; during those contacts, there was no discussion of a search of the 1987 Nissan Pathfinder. There were no circumstances that would allow the Court to infer that the parties to the contract for the sale of the 1987 Nissan Pathfinder commonly held a tacit understanding that the Government was contractually obligated to search the vehicle and remove all of the illegal narcotics so that the plaintiff would be protected from future prosecution and/or imprisonment for trafficking illegal narcotics.[1]

Rather, the only facts and circumstances evidencing the parties' mutual understanding and intent concerning the sale of the 1987 Nissan Pathfinder are embodied solely in the written documents that comprise the sale contract. Specifically (and as this Court construed the contract for purposes of summary judgment in its March 27, 2006 order), the contract consists of three documents: (1) the brochure advertising the September 5, 2001 auction; (2) the plaintiff's bidder registration form; and (3) the sale catalog referenced upon the plaintiff's bidder registration form. The brochure advertising the September 5, 2001 auction contained the following language:

[1] At his deposition, the plaintiff testified about only two aspects of the inquiry into the facts and circumstances surrounding the sale of the 1987 Nissan Pathfinder. First, he testified that the auctioneer's general public statements consisted of: (1) an announcement that McCormack would assist purchasers with the paperwork involved in transferring the vehicles' titles and registration from the United States to the purchaser; and (2) an announcement that the auction would begin in approximately five minutes. The auctioneer made no public statements concerning the fact of or quality of the searches performed upon the vehicles.

> The vehicles offered to you for purchase at any U.S. Customs Auction are sold "AS IS, WHERE IS." This means that neither U.S. Customs or McCormack Auction Company, or E.G. & G Dynatrend, extend any warranties or promises of any kind regarding any aspect of the vehicle or its ability to operate, including but not limited to the vehicle's identity, previous ownership, physical condition, registration status, or ability to pass a smog certification.

The plaintiff's bidder registration form stated: "I agree to comply with the terms of sale contained in the sale catalog for this sale and all future sales I attend." The sales catalog contained the following language:

> **WARRANTY/GUARANTEE:** All merchandise is sold on an "AS IS, WHERE IS" basis, without warranty or guarantee as to condition, fitness to use, or merchantability stated, implied or otherwise. Please bid from your personal observations.

III. Contentions Of Fact Regarding The Plaintiff's Arrest And Incarceration[2]

On Thursday, January 24, 2002, the plaintiff drove the 1987 Pathfinder to Tijuana, Mexico. On this trip, the plaintiff was accompanied by Mr. Alfonso Calderon. The plaintiff and Mr. Calderon were stopped by Mexican authorities at a highway check point. The Mexican police discovered several bricks of marijuana concealed within the 1987 Nissan Pathfinder, and immediately arrested the plaintiff and Mr. Calderon for trafficking illegal narcotics.

The plaintiff and Mr. Calderon were tried upon the trafficking charge. At the plaintiff's criminal trial, evidence was presented regarding the circumstances surrounding the discovery of the marijuana by the Mexican police. Specifically, the Mexican police discovered the marijuana only after searching the vehicle for three hours. The Mexican police eventually discovered 22

---

[2] The facts stated in this section are taken entirely from the documentary evidence from the plaintiff's Mexican criminal trial and appeal, which the plaintiff provided to the defendant during discovery.

packages of marijuana, with a total weight of 17.220 kg, concealed between the upholstery walls near the wheel well, inside the body of the 1987 Nissan Pathfinder. The marijuana was packaged in several cellophane bricks wrapped with adhesive tape and hermetically sealed. The packages themselves were also covered in a thick layer of dust and dirt.

Subsequent chemical analysis of the packages by Mexican law enforcement personnel revealed that the marijuana was at least six months old at the time of the plaintiff's arrest, and it had decomposed to the point where it was likely not fit for use as a drug.

Despite this evidence, the plaintiff and Mr. Calderon were convicted and imprisoned. They pursued their appellate rights and, on January 10, 2003, were exonerated and released. In total, the plaintiff and Mr. Calderon spent 351 days in prison. In addition to the facts and evidence outlined above, the Mexican appellate court also considered Customs' seizure file for the 1987 Nissan Pathfinder, which the plaintiff's criminal attorney had obtained from Customs through a Freedom of Information Act ("FOIA") request. In reaching its conclusion that the plaintiff and Mr. Calderon were not guilty of the trafficking charge, the Mexican appellate court noted that the marijuana seized by the Mexican authorities was packaged in an identical fashion as the marijuana seized by Customs on January 25, 2001.

IV. Contentions Of Fact Regarding The Preservation Of The Vehicle And The Marijuana

The marijuana seized by both United States and Mexican authorities was destroyed in accordance with each government's official policy prior to the initiation of litigation in this Court, thus making physical examination of the marijuana impossible for purposes of this trial. Also, the 1987 Nissan Pathfinder was retained by the Mexican authorities as evidence and eventually destroyed in accordance with that government's official policy prior to the initiation

of litigation in this Court, also making any physical examination of the vehicle impossible for purposes of this trial.

V. Contentions Of Fact Regarding Plaintiff's Allegation That Customs Had Policy Of Purposefully Curtailing Searches Of Seized Vehicles

The evidence will demonstrate that, at best, there was a short-lived rumor circulating among Customs officers that the agency wanted to limit damage to searched vehicles in order to increase the price of vehicles sold at auction. The evidence will demonstrate that none of the officers involved in the search of the 1987 Nissan Pathfinder (or, for that matter, any of the officers who will testify) ever acted in accordance with such rumor.

The evidence will also demonstrate that Customs did enforce a policy prohibiting officers from wantonly destroying vehicles during searches. Such policy was created in response to the receipt of an increased number of property-damage claims filed by owners of vehicles that were searched, but eventually returned because the search produced no illegal contraband. Some officers had been engaging in search techniques that inflicted severe damage to these automobiles, such as broken glass, scratches and dents in the body from crowbars, punctured tires, and even body panels removed with blowtorches. To limit wanton destruction, Customs enacted a policy that required searching officers to disassemble the automobiles in such a fashion so they could be reassembled. For example, if a body panel could be removed by unscrewing a fastening clip, then the use of blowtorches was discouraged. However, this policy was secondary to the officers' obligation to conduct a thorough search of every vehicle, and the practice of destructive searches continued when necessary to discover concealed contraband.

Senior Customs officials believed that the rumor concerning increased auction prices had been started by officers who were reprimanded for their destructive searching habits (and who

caused the policy to be implemented).

VI. Contentions Of Fact Regarding Plaintiff's Alleged Damages

A. Lost Income

Prior to being incarcerated, the plaintiff owned a printing business from which he earned $1,600.00 per month. The plaintiff did not work or otherwise have any earnings while he was incarcerated. Immediately following his release from prison, in January 2003, the plaintiff began working again in the printing business and earned $800.00 per month. The plaintiff maintained this level of income until February 2006, when he obtained additional employment as a municipal employee of the city of Tijuana, where he earns $1,672.00 per month (in addition to the $800.00 per month he earns from his printing business). Accordingly, since February 2006, the plaintiff has earned $2,472.00 per month. The plaintiff's damages for lost income, assuming a breach occurred and he is legally entitled to receive such damages, are therefore, at most, $48,000.[3]

B. Medical Expenses

While he was incarcerated, the plaintiff was medically examined by Dr. Cesena Caro and Dr. Velasquez. Both doctors charged $5,000.00 for their initial examinations and diagnoses, for

---

[3] The arithmetic for arriving at this figure is as follows:

> [lost income during incarceration ("LIDI")] = [monthly income level prior to incarceration] * [months incarcerated] –> LIDI = $1,600 * 11.5 = $18,400.
>
> [lost income after incarceration ("LIAI")] = [diminished earning after incarceration] * [months until diminished income was mitigated/replaced] –> LIAI = $800 * 37 = $29,600
>
> Total Lost Income = LIDI + LIAI = $18,400 + $29,600 = **$48,000**

a total initial medical expense of $10,000. The plaintiff has not paid these bills, and remains indebted to both doctors. Since being released from prison, the plaintiff has received medical care only from Dr. Caro. The plaintiff has not provided the defendant with any evidence that Dr. Caro has billed the plaintiff for these services, or that the plaintiff has paid for these services. Thus, assuming a breach occurred and he is legally entitled to receive his medical expenses as damages, and assuming no further factual evidence concerning these expenses is presented at trial, the plaintiff's medical expense damages are, at most, $10,000.

C. Psychiatric Expenses

While he was incarcerated, the plaintiff received mental health examinations and diagnoses from Drs. Medina, Moreno, and Santillana. Drs. Moreno and Santiana charged $5,000.00 each for their initial examinations and diagnoses. Dr. Medina charged $2,500.00 for his initial examination and diagnosis. The plaintiff has not paid these bills, and remains indebted to all three doctors. Since being released from prison, the plaintiff has received psychiatric care only from Dr. Santillana. The plaintiff has not provided the defendant with any evidence that Dr. Santillana has billed the plaintiff for these services, or that the plaintiff has paid for these services. Thus, assuming a breach occurred and he is legally entitled to receive his psychiatric expenses as damages, and assuming no further factual evidence concerning these expenses is presented at trial, the plaintiff's medical expense damages are, at most, $12,500.

D. Attorney Fees

The plaintiff claims he is entitled to recover his attorney fees and expenses for both the cost of defending himself in his Mexican criminal proceeding (both trial and appellate), as well as pursuing his civil claims against the United States (both here and in the Southern District of

California). The Court has already addressed the issue of the plaintiff's ability to recover his attorney fees and expenses incurred in defending himself in his criminal proceeding, and ruled, over the Government's objection, that he is able to do so, subject to appropriate proof of foreseeability and quantum at trial. Regarding such proof, the plaintiff claims that he incurred attorney fees and expenses from two separate law firms: (1) Sr. Carlos Mejia-Lopez, his Mexican criminal attorney; and (2) Suppa, Trucchi, and Henein, LLP, the firm that also represents him in this proceeding. The plaintiff has not provided any evidence of the fees and expenses claimed from the Suppa firm, but counsel have agreed that such evidence will be provided prior to trial and in time to stipulate to any reasonable amounts, should they be otherwise recoverable.

With respect to the fees incurred for Sr. Mejia-Lopez's services, the plaintiff claims that he has incurred $350,000 in legal fees. The plaintiff has not, however, provided any legal bills evidencing the amount claimed. Rather, the plaintiff has provided an unsigned, Microsoft Word electronic document, created on August 1, 2006, stating generally that Sr. Mejia-Lopez performed $350,000 of legal work for the following tasks:

(a) 42 days spent traveling to and from Ensenada prison to work on the plaintiff's criminal case, for 10 hours a day at a rate of $150/hour (totaling $63,000).

(b) 8 days spent traveling to Mexicali to work on the plaintiff's criminal case, for 10 hours a day at a rate of $150/hr (totaling $12,000).

(c) 300 days (the remaining days of the plaintiff's incarceration) spent working on the plaintiff's criminal case in Sr. Mejia-Lopez's office, for 6 hours a day at a rate of $125/hour (totaling $225,000).

(d) $25,875 generally billed for Sr. Mejia-Lopez's work on the plaintiff's tort claim that was brought in (and dismissed from) the United States District Court for the Southern District of California.

It appears from the plaintiff's witness list that he may intend to call Sr. Mejia-Lopez to testify about his fees. Such testimony is required because the defendant maintains that the evidence submitted to date is insufficient to establish the fees actually incurred (in addition to the fact that the fees stated in the unsigned electronic document, when added, do not total $350,000).

E. Other Claimed Damages

The plaintiff has also claimed that he is entitled to:

(a) $3,500 for the replacement value of the 1987 Nissan Pathfinder;

(b) $5,850 for the loss of use of the 1987 Nissan Pathfinder between the date of the plaintiff's incarceration and April 4, 2006 (the date of the plaintiff's damages calculation);

(c) $67,500 for interpreter fees; and

(d) Multiple millions of dollars for emotional damages.

The evidence demonstrates, and the plaintiff admits, that he purchased the 1987 Nissan Pathfinder for $2,600. This is the best evidence of the actual value of the 1987 Nissan Pathfinder, and this is the only amount that the plaintiff can prove.

At his deposition, the plaintiff testified that, immediately upon his release from prison, he obtained a replacement vehicle for the 1987 Nissan Pathfinder to use in connection with his printing business. Additionally, any loss-of-use value to the plaintiff for the vehicle should be reflected in his business earnings, which are his lost income. Therefore, this is not a separate compensable element of the plaintiff's damages.

The plaintiff has provided no documentation of the $67,500 interpreter fee expense.

Finally, in his pretrial memorandum, the plaintiff has not identified any facts whatsoever that would bear upon his claim for emotional distress damages. Additionally, the defendant

maintains, and explains in further detail in its discussion of applicable legal principles, below, that such damages are not available to the plaintiff as a matter of law in this breach of contract case.

## ISSUES OF FACT AND LAW TO BE RESOLVED BY THE COURT[4]

I. Issues of Fact

(1) Whether an implied-in-fact warranty existed between the plaintiff and the United States to search the 1987 Pathfinder and remove all illegal contraband prior to its sale at auction.

(2) Whether the United States engaged in a practice of curtailing searches of seized vehicles in order to artificially raise the sale prices of those vehicles when they were sold at public auction.

(3) If necessary, what type of search was performed upon the 1987 Nissan Pathfinder prior to its sale at auction.

II. Issues of Law

(1) Whether the superior knowledge doctrine may apply to this case, where the defendant's alleged withholding of vital information did not increase the cost of plaintiff's performance under the contract.

(2) Whether the defendant breached an implied-in-fact term of the sale contract (assuming such term exists).

(3) Whether the defendant breached the implied covenant of good faith and fair dealing.

[4] The plaintiff has not identified any issues of fact or law to be resolved by the Court. The issues stated by the defendant are based upon our own assessment of the case, and also attempt to predict what issues the plaintiff will need resolved so that he may present his case.

(4) Whether the plaintiff may recover emotional distress damages.

DEFENDANT'S CONTENTIONS OF LAW

I. Law Regarding Liability

In its March 27, 2006 order, the Court identified three potential legal theories under which the plaintiff might establish the defendant's liability for a breach of contract: (1) the existence of (and breach of) an implied-in-fact contract; (2) a breach of the covenant of good faith and fair dealing; and (3) the superior knowledge doctrine. We understand that these are the legal theories under which the plaintiff will attempt to prove liability, even though the plaintiff's pretrial memorandum does not specifically state as much. As explained more fully below, the plaintiff cannot establish liability under any of these theories.

A. Implied In Fact Warranty

The plaintiff claims that the defendant had a general duty to search seized vehicles prior to resale at public auction to ensure that all contraband had been removed from the vehicles prior to their transfer to any purchaser. In his pretrial memorandum, the plaintiff states that the "USA is required under its policies and procedures to search any automobile when there is probable cause to suspect narcotics to be hidden within the vehicle, and that the USA's search [of the 1987 Nissan Pathfinder] was significantly incomplete substandard and incomplete." Pls. Pretrial Mem. at 4.

"[T]o recover for a breach of warranty, a plaintiff must allege and prove (1) that a valid warranty existed, (2) the warranty was breached, and (3) plaintiff's damages were caused by the breach." Hercules, Inc. v. United States, 24 F.3d 188, 197 (Fed. Cir. 1994). "An agreement implied-in-fact is one 'founded upon a meeting of the minds, which, although not embodied in

an express contract, is inferred, as a fact, from the conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding.'" Hercules, Inc. v. United States, 516 U.S. 417, 423-24 (1996) (quoting Baltimore & Ohio R. Co. v. United States, 261 U.S. 592, 597 (1923)); Int'l Data Prods. Corp. v. United States, 492 F.3d 1317, 1325 (Fed. Cir. 2007) (same); Fiske & Co. v. United States, 23 Cl. Ct. 200, 202-03 (1991) ("An implied in fact contract, moreover, must contain all the elements of an express contract, namely, mutuality of intent, offer and acceptance, and actual authority to bind the Government in a contract by the officer whose conduct is relied upon.").

Where there is no possibility of adducing evidence concerning the facts and circumstances surrounding the transaction beyond the written documents already available, and the written documents do not contain or suggest the term urged by the plaintiff, dismissal of the implied-in-fact contract claim is appropriate . Girling Health Sys., Inc. v. United States, 22 Cl. Ct. 66, 69-70 (1990); see also Fiske, 23 Cl. Ct. at 202 ("Liability cannot be implied as a matter of law merely because of the relationship of the parties.").

In this case, the plaintiff's explanation of his claim in his pretrial memorandum demonstrates that he intends to rely upon Customs' statutory and regulatory law enforcement duty to establish the Government's contractual obligation to search the 1987 Nissan Pathfinder. See Pls. Pretrial Mem. at 4 ("USA is required under its policies and procedures to search any automobile when there is probable cause to suspect narcotics to be hidden within the vehicle); id. at 6 ("USA had a contractual obligation and a regulatory duty to conduct a thorough search of seized vehicles"); id. at 10 ("Mr. Ahern testified that USA is required by its rules and regulations to perform a complete and thorough search of the vehicle"); id. at 11 ("once the USA's policies

and procedures for conducting searches of seized vehicles was determined, it was the USA's responsibility to see that they were followed with 'constant vigilance'"). The plaintiff's only reference to any facts or circumstances regarding the alleged implied-in-fact warranty appears at page eight of the plaintiff's pretrial memorandum, following a two-page discussion of caselaw cited by the Government in its 2005 motion to dismiss and for summary judgment and the "as-is" warranty contained in the sale contract: "Plaintiff contends that these facts show that these sales, presented as US forfeiture sales, created an affirmation of fact that would lead the reasonable purchaser to believe that the vehicles had been adequately searched prior to the sale." Id. at 8.

The plaintiff's entire implied-in-fact contract claim, therefore, relies upon Customs' statutory and regulatory law enforcement duties. The problem is that such duties can be implied as a term in the plaintiff's sale contract only as a matter of law. See Hercules, 516 U.S. at 423-24 ("an agreement implied in law is a fiction of law where a promise is imputed to perform a legal duty . . .") (internal citation and quotation marks omitted). Such a term is beyond this Court's jurisdictional reach, and cannot support a finding of liability in this case. Rivera-Agredano, 70 Fed. Cl. at 573.

The plaintiff's own testimony further demonstrates that there are no factual circumstances surrounding the sale of the 1987 Nissan Pathfinder that would give rise to an inference that both parties mutually understood that Customs would perform some type of search prior to the auctioning of the 1987 Nissan Pathfinder. While the Government did have a policy to search all such vehicles multiple times prior to auctioning in an effort to ensure that all contraband had been removed from the vehicles prior to passing them on the to the purchasing

public, such policy was never communicated or advertised as a term or warranty of the plaintiff's sale contract. Additionally, all the Government's witnesses were deposed upon this subject, and all uniformly indicated that: (1) the pre-auction search policy was implemented to satisfy Customs' statutory and regulatory duty to fulfill its law-enforcement role to interdict all illegal contraband passing over the United States-Mexico border; and (2) none of them communicated anything to the plaintiff concerning this policy (or any other subject) prior to, during, or after the sale of the 1987 Nissan Pathfinder to the plaintiff.[5]

There is simply no evidence in the record that will support a factual inference that the parties had a mutual understanding at the time of contracting that Customs warranted that it had or would search the 1987 Nissan Pathfinder. At best, the plaintiff can establish a prima facie case that Customs was subject to an independent statutory or regulatory duty to search the vehicles prior to sale at auction, but such a duty can only be an implied-in-law contractual term, and that is insufficient to form a basis of liability in this case.

---

[5] The plaintiff relies heavily upon the deposition testimony of Lawrence Fanning, which he characterizes as an admission by the United States that "the pre-auction 'reinspection' searches were for the purpose of protecting the purchaser and any other occupant from the risk of imprisonment that could occur should they be in the vehicle at a time that any inadvertently overlooked narcotics were discovered by law enforcement." Pls. Pretrial Mem. at 2. However, as we pointed out in our response to Mr. Calderon's February 2007 motion to reconsider his third-party beneficiary status, Mr. Fanning answered "I think it's fair to say that" in response to the question "So part of the purpose of that [pre-auction] search is to protect the purchasing public," and he further testified that (a) he is not a policy maker for the United States; and (b) all of his testimony concerning the reasons why the United States conducts searches on forfeited automobiles is given from his own personal view. This Court has already confirmed that the plaintiff's view of Mr. Fanning's testimony is incorrect. See Rivera Agredano v. United States, 76 Fed. Cl. 315, 319 (2007) (observing that, with respect to the issues of third-party beneficiary status and the purpose of the preacution reinspections, "[t]he testimony of Mr. Fanning appears to express his opinion"). We anticipate that Mr. Fanning's trial testimony will be consistent with his deposition testimony.

B. Good Faith And Fair Dealing

The plaintiff also claims that the defendant breached the implied covenant of good faith and fair dealing by purposefully curtailing its pre-auction searches of seized vehicles in an attempt to maximize the profits realized from the vehicles' sales. In our 2005 motion to dismiss and for summary judgment, we argued that the plaintiff could not prove a breach of this implied term absent evidence of the Government's specific intent to injure the plaintiff or actual malice toward the plaintiff. The Court has already rejected this position, and held that the proper inquiry is that "no party may act to destroy the reasonable expectations of its contracting partner regarding the fruits of the contract." Rivera-Agredano, 70 Fed. Cl. at 574 (citing Centex Corp. v. United States, 395 F.3d 1283, 1304 (Fed. Cir. 2005)).

While we respectfully disagree with the Court's earlier ruling upon this point, even under the less-stringent standard articulated by the Court in its earlier order, the plaintiff cannot prove his allegation. The plaintiff deposed the Government's witnesses about the alleged policy to curtail searches, and all witnesses testified that: (1) this was nothing more than a rumor, if anything at all; (2) it was not promulgated or condoned by Customs; and (3) none of the officers involved in the search of the 1987 Nissan Pathfinder ever acted in a manner consistent with the rumor by curtailing their own search efforts. Rather, the testimony established that such rumors were probably circulated by officers who had been reprimanded for overzealously committing wanton destruction of vehicles during their searches. To the extent there was a damage-limiting policy in place, it prohibited officers from using destructive search methods where non-destructive methods functioned just as well. However, this did not mean that the officers were allowed or encouraged to perform less-than-thorough searches; if property destruction was

necessary to gain access to contraband, it was permitted.

The plaintiff's allegation regarding this policy is not based in fact, and it therefore will not satisfy the plaintiff's burden of proving that the Government "act[ed] to destroy the reasonable expectations of its contracting partner regarding the fruits of the contract." Rivera-Agredano, 70 Fed. Cl. at 574. Customs searched all the vehicles, and in doing so, made a conscious effort to avoid needless destruction. This is not a violation of the implied covenant of good faith and fair dealing.

C. Superior Knowledge

In his complaint, the plaintiff suggests that Customs was obligated to disclose its search efforts to the plaintiff in connection with the auction, and that any failure to do so is a breach of contract. The Court has clarified that such an allegation is operable only under the superior knowledge doctrine. Rivera-Agredano, 70 Fed. Cl. at 575.

We respectfully suggest that the superior knowledge doctrine is not applicable to this case.[6] "To show a breach under the superior knowledge doctrine, a contractor claiming a breach by non-disclosure must produce specific evidence that it: (1) undert[ook] to perform without vital knowledge of a fact that affects performance costs or direction; (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information; (3) any contract specification supplied misled the contractor, or did not put it on notice to inquire; and (4) the government failed to provide the relevant information." GAF, Inc. v. United States, 932

[6] The Court's discussion of the superior knowledge doctrine in its March 27, 2006 order appeared sua sponte; the parties have not previously briefed this issue. To the extent the Court considers its earlier comments upon the applicability of this doctrine to be law of the case, we respectfully request that the Court reconsider its earlier statement in light of our discussion here.

F.2d 947, 949 (Fed. Cir. 1991). This doctrine, however, does not impose a general duty upon the Government to disclose everything within its sphere of knowledge to its contracting partners, and it cannot be applied to any breach claim to support any type of damages. Rather, it is only "tenable where the government fails to provide a contractor with vital knowledge in the government's possession which bears upon the costs of the contractor's performance under the contract at issue." Hercules, Inc. v. United States, 24 F.3d 188, 196 (Fed. Cir. 1994), aff'd on other grounds, 516 U.S. 417 (1996) (emphasis added). Because the plaintiff does not claim any increased cost of performance in purchasing the 1987 Nissan Pathfinder, the superior knowledge doctrine cannot be applied to find a breach in this case.

In Hercules, Inc. v. United States,[7] the plaintiff had manufactured Agent Orange for military use and was later named as a defendant in "Agent Orange litigation" -- civil actions brought by veterans who had been injured by the product while serving in the military. 24 F.3d at 191. Rather than litigating these cases to a decision upon the merits, Hercules voluntarily settled its Agent Orange cases and then sought indemnification from the Government for these settlement amounts and related expenses. Among the various theories Hercules forwarded in support of its claim against the Government was the superior knowledge doctrine. Specifically, Hercules argued that the military had conducted tests upon Agent Orange and knew the dangers it posed to the servicemen who used it, but it failed to disclose these dangers to the Hercules, and therefore the plaintiff should be able to recover the settlement amounts it paid to the veterans. The Federal Circuit affirmed the trial court's dismissal Hercules' superior knowledge claim,

[7] And its companion case Wm. T. Thompson Co. v. United States, 26 Cl. Ct. 17 (1992), the appeal of which was consolidated with the Hercules appeal.

holding that the doctrine was simply inapplicable to Hercules' claim because the damages Hercules sought -- post-performance litigation and settlement expenses -- were not related to the cost of performing its contract with the Government. Id. at 197 ("Put another way, nothing the government did or failed to do had any impact upon Hercules' [] production of Agent Orange."). The Federal Circuit specifically refused to expand the superior knowledge doctrine beyond its narrowly defined parameters. Id. ("We decline to accept Hercules' and Thompson's invitation to extend the doctrine of superior knowledge to encompass their claims for post-performance settlement and litigation expenses, because those expenses were not incurred during the performance of the underlying contract.").

The Federal Circuit's decision in Hercules is controlling in this case. The plaintiff here seeks a host of different types of contract and non-contract damages, but he does not seek any increased cost of purchasing the 1987 Nissan Pathfinder. Indeed, in his damages calculation appearing at the end of his pretrial memorandum, the plaintiff claims $3,500 as the replacement cost of the 1987 Nissan Pathfinder, even though he only paid $2,600 to purchase it. Pls. Pretrial Mem. at 19. If anything, the plaintiff paid less than the estimated market value of the vehicle (assuming his stated replacement value is based upon a widely accepted market valuation guide, such as Kelly BlueBook). The superior knowledge doctrine is simply not applicable to this case.

## II. Law Regarding Damages

We raised our general objection to the plaintiff's ability to recover the unforeseeable damages he claims in our prior motion to dismiss and for summary judgment. The Court ruled that the general foreseeability issue was more appropriately resolved at trial and that, assuming foreseeability is established for the plaintiff's incarceration, any attorney fees incurred by the

plaintiff in defending his criminal action are recoverable in this case. Without waiving our earlier objection, we understand that, for the purposes of trial, the Court's earlier decision is the law of the case.

The only damages issue that remains undecided is whether the plaintiff is entitled to recover emotional-distress damages for the alleged breach in this case. Generally, emotional distress damages are not recoverable in contract cases. Bohac v. Dep't of Agric., 239 F.3d 1334, 1340 (Fed. Cir. 2001). There are, however, certain types of contracts under which emotional distress damages are available -- specifically, contracts between carriers and passengers, inkeepers and guests, for the disposition of dead bodies, and delivery of messages concerning death. Id., citing Restatement (Second) of Contracts § 353 cmt. a. These specific types of contracts represent a general category of contracts that the breach of the contract is "particularly likely to cause serious emotional damage." Id. The objects of such contracts are personal rights, dignity, and/or emotions, and thus, mental distress resulting from a breach of these contracts is foreseeable or particularly likely. See, e.g., Kewin v. Mass. Mut. Life Ins. Co., 295 N.W.2d 50 (Mich. 1980); Crisci v. Sec. Ins. Co. of New Haven, Conn., 426 P.2d 173 (Cal. 1967) (emotional distress damages available only for contracts directly concerning comfort, happiness or personal esteem of one of the parties); Stanback v. Stanback, 254 S.E.2d 611 (N.C. 1979) (emotional damages not available unless the object of contract is the dignity, mental concern or solicitude, or sensibilities of the party); Stewart v. Rudner, 84 N.W.2d 816 (Mich. 1957) (emotional damages only available in contracts involving "rights cherished, dignities respected, and emotion recognized by all as both sacred and personal"). Contracts for the purchase of cars or other vehicles do not involve such highly personal interests, and emotional damages are not available

for their breach. Alston v. Fleetwood Motor Homes of Ind., Inc., 480 F.3d 695 (5th Cir. 2007) (under Louisiana law, mental anguish damages are recoverable for a breach of contract only where the object of the contract is an item that satisfies a nonpecuniary interest, and a contract for an automobile presumptively does not satisfy this condition, unless it is an "antique or a specially-designed custom-built vehicle"); Wise v. Gen. Motors Corp., 588 F. Supp. 1207 (W.D Va. 1984) (emotional damages unavailable for contract to perform automobile repairs).

In this case, the evidence will show that the plaintiff and his companion, Mr. Calderon, purchased the 1987 Nissan Pathfinder to use it in connection with their printing business. As discussed earlier in this memorandum, they will not be able to demonstrate any facts or circumstances that would support an inference that the written sale contract also contained an implied term requiring a search of the vehicle prior to the sale. The contract at issue here is for the sale of a vehicle, and that vehicle was bought for commercial purposes. This is not the type of contract that will allow the plaintiff to recover damages for emotional distress. The Court should decide this issue as a matter of law and bar the plaintiff from presenting any evidence concerning Mr. Rivera's alleged emotional damages.

## III. Response To Plaintiff's Legal Position

The plaintiff's legal discussion is not clearly organized, and it is difficult to ascertain what legal issues the plaintiff asserts will be involved in this trial. Nevertheless, the plaintiff's memorandum appears to touch upon the following legal issues: (1) the availability of emotional distress damages in this contract action; (2) the availability of attorney fees as damages in this contract action; (3) the covenant of good faith and fair dealing; (4) foreseeability of damages; (5) the validity of the "as is" warranty contained in the contract; and (6) implied-in-fact contracts.

The plaintiff claims that the published decision in Rodriguez v. United States, 69 Fed. Cl. 487 (2006), contains a statement that the plaintiff in that case "could also pursue a claim for emotional distress damages on these same causes of action." Pls. Pretrial Mem. at 2. The plaintiff does not, however, provide a citation for this statement, and we are unable to locate such a statement in that order. Instead, the Rodriguez court mentioned the defendant's argument that awards of emotional distress damages are beyond the court's jurisdictional reach, observed that the plaintiff "fail[ed] to specify damages that she actually suffered, except for generalized property damages," and permitted her to amend her claim to properly plead her damages, stating, "Mrs. Rodriguez could be entitled to relief if she were to amend her complaint and seek damages based purely upon contractual remedies, whether premised upon expectancy, reliance, or restitutionary theories." 69 Fed. Cl. at 495.[8] Aside from this, the plaintiff offers no legal authority or argument for its contention that emotional distress should be available to the plaintiff in this breach of contract action.

The plaintiff also spends many pages re-arguing the issue of the availability of attorney fees as damages. Pls. Pretrial Mem. at 2-4 (citing de la Hoya v. Slim's Gun Shop, 80 Cal. App. 3d Supp. 6 (1978). The Court has already addressed the issue of the availability of this component of damages and framed the issue as, "[i]f . . . the arrest and detention were foreseeable and a direct result of defendant's failure to perform an adequate search of the vehicle prior to sale, the need to defend the [criminal] suit was also foreseeable as a direct result of the

[8] The plaintiff also cites Rodriguez for the apparent purpose of prejudicing the Court by suggesting that the facts of that case -- which, as alleged, are very similar to those in the present case -- have already been decided against the Government. See Pls. Pretrial Mem. at 5 (reciting allegations from the complaint filed in Rodriguez). They have not.

detention and arrest." Rivera-Agredano v. United States, 70 Fed. Cl. 564, 576 (2006).

With respect to his claim invoking the implied covenant of good faith and fair dealing, the plaintiff appears to rely upon Pratt v. United States, 50 Fed. Cl. 469 (2001), and Franklin Savings Corp. v. United States, 56 Fed. Cl. 720 (2003). The plaintiff's discussion of Pratt focuses upon a passage from that decision addressing the Court's jurisdiction to entertain claims of tortious breach of contract in this Court -- a claim that the plaintiff has not made in this case. Pls. Pretrial Mem. at 6. The plaintiff offers no real discussion of Franklin Savings, except to state that the case contains a recitation of the proper burden of proof for establishing a breach of the covenant of good faith and fair dealing. See Pls. Pretrial Mem. at 7 ("This conduct rises to the level required under Franklin Savings . . . to support a claim for violation of the covenant of good faith and fair dealing by the USA."). While the plaintiff does not specifically state in his memorandum what is required "to support a claim for violation of the covenant of good faith and fair dealing," we note that the case contains the following passage on that topic:

> In the context of government contracts, where a plaintiff alleges the government violated the contractual covenant of good faith and fair dealing, there is a strong presumption that the government acted in good faith. This presumption can be surmounted only with a proffer of "well nigh irrefragable proof" of the government's bad faith which requires a showing of the government's specific intent to injure or actual malice on the part of the government toward the plaintiff. Additionally, the implied obligation "must attach to a specific substantive obligation, mutually assented to by the parties."
>
> * * *
>
> Although the obligation of good faith and fair dealing is a real one, it is not a catch-all for Franklin whereby they can retroactively insert specific obligations into an otherwise silent contract. A holding to the contrary would allow the covenant of good faith and fair dealing to supplant specific terms of the contract. Moreover, it would obviate classic contract law and eliminate any incentive to enter a contract in the first place since neither party could be

> assured that the terms of the contract were final, exclusive and binding.

Franklin Savings, 56 Fed. Cl. at 744-45 (internal citations omitted). This passage supports our argument concerning the plaintiff's insurmountable burden upon its good faith and fair dealing claim upon its motion to dismiss and for summary judgment. The Court rejected that argument in its order upon that motion, and the law of the case has been established for this issue. See Rivera-Agredano, 70 Fed. Cl. at 573-74. However, because the plaintiff offers no other support for its legal arguments concerning its good faith and fair dealing claim, we would gladly accept the plaintiff's apparent concession that he does, in fact, bear the strict burden upon this claim that we have been urging all along.

The plaintiff next regurgitates the foreseeability argument he made in connection with our motion to dismiss and for summary judgment. Pls. Pretrial Mem. at 7 (citing Cervantes v. United States, 330 F.3d 1186 (9th Cir. 2003), and Rodriguez v. United States, 69 Fed. Cl. 487 (2006)). The Court has already addressed this argument, and has specifically stated the relevance of each of these two cases to the foreseeability inquiry. See Rivera-Agredano, 70 Fed. Cl. at 575 n.9.

The plaintiff also makes a lengthy argument in response to the Government's assertion in our prior motion to dismiss and for summary judgment that the "as is" clause contained in the sale contract prevents the plaintiff from stating a claim upon which relief may be granted. Pls. Pretrial Mem. at 8-10 (citing Pratt, 50 Fed. Cl. 469; and Solar Turbine v. United States, 26 Cl. Ct. 1249 (1992)). Again, this issue was one of the defendant's early challenges raised in its 2005 motion to dismiss and for summary judgment. The Court has already ruled upon this issue, and there is no need to reargue it at trial. See Rivera-Agredano, 70 Fed. Cl. at 572-73.

With respect to his implied-in-fact warranty claim, the plaintiff contends that Hatzlachh Supply Co. v. United States, 444 U.S. 460 (1980), holds "that the absence of Government tort liability has not been thought to bar contractual remedies on implied-in-fact contracts, even in those cases also having elements of a tort: 'Without more, either the existence of a tort remedy nor the lack of one is relevant to determining whether there is an implied-in-fact contract . . . .'" Pls. Pretrial Mem. at 11. Although the plaintiff accurately quotes the Hatzlachh opinion, the substance of the statement is not helpful in his case. We do not contend that the availability of a tort remedy precludes the plaintiff's ability to state a contract claim. Indeed, in this case, the plaintiff has no tort remedy.

Finally, the plaintiff cites the Ninth Circuit's admonition to the United States to remember its obligation to do justice from Cervantes v. United States, 330 F.3d 1186 (9th Cir. 2003). Pls. Pretrial Mem. at 4-5. Mr. Rivera implies that the United States' defense of this case is worthy of rebuke, and we should simply end this litigation and compensate him in the amount he has demanded. The plaintiff reads too much into the language of the Cervantes decision. There is nothing in Cervantes suggesting that we are prevented from raising applicable contract defenses in response to Mr. Rivera's claim.

## OBJECTIONS TO PLAINTIFF'S WITNESS AND EXHIBIT LISTS

### I. Objections To Plaintiff's Witness List

The defendant generally objects to the plaintiff's failure to conform his witness list to the requirements of the Court's rules. Appendix A, paragraph 15(a) required the plaintiff to file a final witness list as a separate statement, and indicating for each witness whether they would be called for the plaintiff's case-in-chief or for rebuttal purposes, whether they are expected to

testify or may testify, the specific topics that the witness will address, and the anticipated duration of the witness' testimony. The plaintiff has submitted a list of 65 witnesses, and most (but not all) have only a short description of the topics about which they will testify. The plaintiff has not identified which of these witnesses will testify and which may testify, nor has he indicated how long each witnesses' testimony will last. This trial is only scheduled to last one week. With 65 witnesses to be called in that amount of time, assuming trial lasted for eight hours per day without any breaks, each witness would only be able to testify an average of 36 minutes. This is not a feasible trial plan.

The defendant further objects to the following witnesses identified by the plaintiff:

***Jose Jimenez Coronel.*** Mr. Coronel is the individual who was arrested in January 25, 2001, for attempting to cross from Mexico into the United States while driving the 1987 Nissan Pathfinder laden with concealed contraband. He is identified as having knowledge of the original seizure of the 1987 Nissan Pathfinder. This knowledge is not relevant to the plaintiff's case. It is not disputed that the 1987 Nissan Pathfinder was seized from Mr. Coronel, nor is the fact that it was seized because marijuana was found concealed within the vehicle. Accordingly, Mr. Coronel's testimony should be excluded under Rules 401 and 403 of the Federal Rules of Evidence, which prevent irrelevant, prejudicial and confusing evidence to be presented at trial.

***Adrian Rodriguez, Ali Jazmin Rodriguez, Fernando Benitez Alvarez del Castillo, Jose Miguel Ramirez Bilbao, Adrian Sanchez Bolanos, and Bob Filner.*** These witnesses are the plaintiffs in Rodriguez v. United States, Fed. Cl. No. 05-370, as well as the Rodriguez family's attorneys and a United States Congressman who assisted the Rodriguez family in their efforts to obtain the release of Mr. Rodriguez from prison in Mexico. These witnesses may have

testimony relevant in the Rodriguez's case, but they do not have any knowledge about Mr. Rivera's contract with the Government, the circumstances surrounding the sale of the 1987 Nissan Pathfinder, or the Mr. Rivera's incarceration. Accordingly, the testimony of these witnesses should be excluded under Rules 401 and 403 of the Federal Rules of Evidence, which prevent irrelevant, prejudicial and confusing evidence to be presented at trial.

***Rosa Elena Olivera Alonso, Evangelina Alonso, and Isabel Gonzalez.*** These three witnesses are identified as "hav[ing] knowledge of a similar type of event involving a vehicle purchased at a custom's [sic] auction." The plaintiff does not identify when this event occurred or whether these witnesses have any personal knowledge of the facts and circumstances surrounding Mr. Rivera's contract. The testimony of these witnesses should be excluded under Rules 401 and 403 of the Federal Rules of Evidence, which prevent irrelevant, prejudicial and confusing evidence to be presented at trial. Additionally, the lack of specificity in the description of these witness' knowledge prevents the defendant from formulating a more substantive response to their listing.

***Daniel Sevilla Mercado, Israel Gomez Romo, Jose Luis Molina Magana, Lorena Blanco, Oscar Preciado.*** These are simply names listed at the end of the plaintiff's witness list. The plaintiff has provided none of the required information about any of them. These witnesses should be excluded for the plaintiff's failure to follow the Court's rules.

II. Objections To Plaintiff's Exhibit List

The defendant has the same general objection to the plaintiff's final exhibit list as it does to the witness list -- the list does not conform to the requirements of the Court's rules. The plaintiff's list does not identify whether the documents will be used in the plaintiff's case-in-

chief or for rebuttal purposes, and there are no indications regarding what exhibits will be used and what exhibits may be used.

The defendant also specifically objects to the following exhibits:

***Plaintiff's Exhibits 3 and 4.*** The defendant objects to plaintiff's exhibits 3 and 4 to the extent that they have not been previously disclosed. The plaintiff has previously disclosed several medical reports and bills reflecting initial physical and psychiatric diagnoses while he was incarcerated. The plaintiff has also testified that he has received continuous medical and psychiatric care since his release from prison; however, he has not produced any medical bills or records to corroborate his testimony. To the extent plaintiff's exhibits 3 and 4 include any documents not already produced in this litigation, the defendant objects to their admission into evidence.

***Plaintiff's Exhibit 7.*** The defendant objects to plaintiff's exhibit 7 to the extent it includes photographs of vehicles other than the 1987 Nissan Pathfinder, which is the only vehicle at issue in this case. The reference to a "Passat" in plaintiff's exhibit 7 is likely directed towards the vehicle at issue in Rodriguez v. United States, Fed. Cl. No. 05-370, which is not relevant to this case. Accordingly, the photographs of the Passat should be excluded under Rules 401 and 403 of the Federal Rules of Evidence, which prevent irrelevant, prejudicial, and confusing evidence to be presented at trial.

***Plaintiff's Exhibits 8, 16, 26.*** The defendant objects to plaintiff's exhibits 8, 16, and 26, as these documents and items have not been previously produced or disclosed in this litigation.

***Plaintiff's Exhibit 17.*** The defendant objects to plaintiff's exhibit 17, as these documents, while possibly relevant in Rodriguez v. United States, Fed. Cl. No. 05-370, are not

relevant to this case. Accordingly, the documents should be excluded under Rules 401 and 403 of the Federal Rules of Evidence, which prevent irrelevant, prejudicial, and confusing evidence to be presented at trial.

***Plaintiff's Exhibits 32, 33.*** The defendant objects to plaintiff's exhibits 32 and 33, as these documents relate to two other legal proceedings that are irrelevant to this case. Accordingly, the documents should be excluded under Rules 401 and 403 of the Federal Rules of Evidence, which prevent irrelevant, prejudicial, and confusing evidence to be presented at trial. Additionally, these documents have not been previously produced or disclosed in this litigation.

## BIFURCATION

The United States respectfully requests that the trial of this case be bifurcated so that liability and damages are tried separately. The plaintiff has listed 65 witnesses, the majority of whom will testify concerning the plaintiff's distressed emotional state. If, as we contend above, the plaintiff is unable to establish the Government's contractual liability in this case, or if the Court rules that emotional damages are not available to the plaintiff in this case, then all parties involved will avoid the time and expense of putting on all of these witnesses whose testimony would be rendered irrelevant.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

s/ Devin A. Wolak
DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 616-0170
Fax. (202) 514-8624

December 18, 2007

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on December 18, 2007, a copy of the foregoing "DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Devin A. Wolak
DEVIN A. WOLAK