**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| FRANCISCO JAVIER RIVERA AGREDANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-608C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**STIPULATIONS OF FACT**

Pursuant to paragraph 17 of Appendix A of the Rules of the United States Court of Federal Claims ("RCFC"), the parties jointly and respectfully submit the following stipulations of fact regarding the trial of the claims of plaintiff, Francisco Javier Rivera Agredano.

STIPULATIONS REGARDING THE TERMS OF THE CONTRACT

1. Three portions of the contract for the sale of the 1987 Nissan Pathfinder at issue are material to this case: (A) the brochure advertising the September 5, 2001 auction; (B) the plaintiff's bidder registration form; and (C) the sale catalog to which the plaintiff's bidder registration form refers.

2. The brochure advertising the September 5, 2001 auction contained the following language:

> The vehicles offered to you for purchase at any U.S. Customs Auction are sold "AS IS, WHERE IS." This means that neither U.S. Customs or McCormack Auction Company, or E.G. & G Dynatrend, extend any warranties or promises of any kind regarding any aspect of the vehicle or its ability to operate, including but not limited to the vehicle's identity, previous ownership, physical condition, registration status, or ability to pass a smog certification.

3. The plaintiff's bidder registration form contained the following language:

> I agree to comply with the terms of sale contained in the sale catalog for this sale and all future sales I attend.

4. The sales catalog contained the following language:

> WARRANTY/GUARANTEE: All merchandise is sold on an "AS IS, WHERE IS" basis, without warranty or guarantee as to condition, fitness to use, or merchantability stated, implied or otherwise. Please bid from your personal observations.

<u>STIPULATIONS REGARDING THE INITIAL SEARCH AND SEIZURE OF THE VEHICLE</u>

5. On January 25, 2001, the United States Customs Service ("Customs") (now United States Customs and Border Protection) stopped a 1987 Nissan Pathfinder at a port of entry at the United States border with Mexico as the 1987 Pathfinder was traveling north into the United States.

6. An initial canine search of the 1987 Nissan Pathfinder indicated the potential presence of illegal narcotics concealed in the fuel tank of the vehicle.

7. Customs immediately removed the vehicle to a secondary searching area, where it searched the vehicle. Customs found 40 packages of marijuana with a total weight of 59.5 pounds concealed in the vehicle's fuel tank. The packages were made of cellophane wrapping and adhesive tape, and were vacuum-sealed.

8. Customs agents arrested the driver and seized the 1987 Nissan Pathfinder.

<u>STIPULATIONS REGARDING THE SALE OF THE VEHICLE</u>

9. On September 5, 2001, the plaintiff purchased the 1987 Nissan Pathfinder at a public forfeiture auction, conducted by Government contractors EG&G, Inc. ("EG&G") (who directed and organized the forfeiture sale) and McCormack Auction Company ("McCormack")

(who actually conducted the auction).

10. The plaintiff purchased the 1987 Nissan Pathfinder for $2,600.

11. At the auction, there was no contact between the plaintiff and any Federal employee. Specifically, the plaintiff had no contact with any person authorized to negotiate binding contracts on behalf of the United States.

12. The plaintiff had no contact with any employee from either EG&G or McCormack, except when the plaintiff (a) registered to participate in the auction, and (b) paid for the 1987 Nissan Pathfinder. During these contacts, neither the plaintiff nor the EG&G or McCormack employees discussed whether a search was performed upon the 1987 Nissan Pathfinder prior to its release for sale at the auction.

13. The only public announcements made at the auction were made by McCormack, and were: (A) that McCormack would assist purchasers with the paperwork involved in transferring the vehicles' titles and registrations from the United States to the purchasers; and (B) that the auction would begin in approximately five minutes.

14. At the auction, no one from the Government, EG&G, or McCormack made any statements whether searches were performed upon the vehicles prior to their sale at auction, nor did anyone make any statements concerning the quality of any searches performed.

STIPULATIONS REGARDING
THE PLAINTIFF'S ARREST, TRIAL, AND INCARCERATION

15. On Thursday, January 24, 2002, the plaintiff drove the 1987 Pathfinder from the City of Ensenada, Baja California to the City of Tijuana, Baja California, Mexico. The plaintiff was accompanied by Mr. Alfonso Calderon.

16. The plaintiff and Mr. Calderon were stopped by Mexican authorities at a highway

checkpoint known as El Sauzal, Ensenada, Baja California, Mexico.

17. The Mexican authorities searched the 1987 Nissan Pathfinder for over three hours and discovered 22 packages of marijuana, with a total weight of 17.220 kg, concealed between the upholstery walls near the wheel well of the vehicle. The marijuana was packaged in several cellophane bricks wrapped with adhesive tape and hermetically sealed. The packages themselves were covered in a thick layer of dust and dirt.

18. The plaintiff and Mr. Calderon were immediately arrested for trafficking illegal narcotics.

19. The plaintiff and Mr. Calderon were tried upon the trafficking charge, and they were convicted. The plaintiff and Mr. Calderon pursued their appellate rights and were eventually exonerated and released from prison on January 10, 2003.

20. The plaintiff was incarcerated between January 24, 2002, and January 10, 2003, for a total of 351 days.

21. Aside from the arrest and incarceration at issue in this case, the plaintiff has no criminal record. More specifically, aside from the arrest and incarceration at issue in this case, the plaintiff had never been accused of or convicted of a crime related to smuggling illegal narcotics.

22. During his incarceration, the plaintiff was examined by several physicians and psychologists. As a result of those examinations, the plaintiff was diagnosed with the following conditions: major depressive reactive disorder, post traumatic stress disorder, peripheral vascular insufficiency, tachycardia, cardiac and thoracic pain, migraine headaches, recurrent pharyngealtonsillitis, dermatitis, high blood pressure, insomnia, dental problems, arthritis in

knees, shoulder and arm, gastroenteritis and digestive problems including nausea, heartburn, diarrhea, pain, problems with his eyes (light sensitivity, tearing, burning and conjunctivitis), edema of the lower extremities, recurring respiratory infections, breathing difficulties (SOB), weight gain, skin abrasions and infections, neurological problems in his arms and legs, injury to shoulder (rotator cuff) when he was arrested, skin rashes and irritation causing constant itchiness on his arms and legs, sexual dysfunction, and recurrent infection in his right ear.

STIPULATIONS REGARDING
THE CONDITION OF THE MARIJUANA SEIZED BY MEXICAN AUTHORITIES

23. At the plaintiff's criminal trial, reports of chemical analyses performed upon the 22 packages of marijuana were admitted into evidence. The reports indicated that the marijuana was at least six months old at the time of the plaintiff's arrest, and it had decomposed to the point where it was likely not fit for human consumption. One report, prepared by chemist Jose Blanco Loya, stated that the marijuana was "highly dehydrated, consistency and texture had been lost, and due to color lost, it had a 'brownie' color trend . . . change in texture and consistency is also due to they [sic] have been stored or exposed to certain physical or atmospherical conditions, change in color is due to an old or stored marijuana." Another report, prepared by chemists Rafael Garcia Guterrez and Miguel Carrillo Mendivil, stated that the marijuana was "highly dehydrated, it has a brownie color . . . it is observable that is marijuana that has been stored for a long time and not only that, at opening a 'rotten' odor comes from the packages . . . it is assumed that such illegal drug was exposed to adverse atmospherical and physical conditions for a long time."

24. The Mexican appellate court that reversed the plaintiff's conviction considered, among other things, Customs' seizure file for the 1987 Nissan Pathfinder and the marijuana

seized on January 25, 2001, which the plaintiff's criminal attorney had obtained from Customs through a Freedom of Information Act ("FOIA") request. The Mexican appellate court found that marijuana seized by the Mexican authorities was packaged in an identical fashion as the marijuana seized by Customs on January 25, 2001.

STIPULATIONS REGARDING DAMAGES

25. The plaintiff's total lost income is $48,000. The defendant neither concedes that this amount is recoverable as damages in this case, nor stipulates that this category of alleged damages was foreseeable.

26. The plaintiff's total medical expenses are $10,000. The defendant neither concedes that this amount is recoverable as damages in this case, nor stipulates that this category of alleged damages was foreseeable.

27. The plaintiff's total psychiatric expenses are $12,500. The defendant neither concedes that this amount is recoverable as damages in this case, nor stipulates that this category of alleged damages was foreseeable.

28. The value of the 1987 Nissan Pathfinder is $2,600. The defendant neither concedes that this amount is recoverable as damages in this case, nor stipulates that this category of alleged damages was foreseeable.

29. Expenses in the amount of $1,254.00 were incurred when the plaintiff's wife traveled to see the plaintiff while he was incarcerated. The defendant neither concedes that this amount is recoverable as damages in this case, nor stipulates that this category of alleged damages was foreseeable.

30. The plaintiff's total criminal attorney fee expenses are $350,000 (for services

rendered by both Lic. Mejia-Lopez and Suppa, Trucchi & Henein LLP). The defendant neither concedes that this amount is recoverable as damages in this case, nor stipulates that this category of alleged damages was foreseeable.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

s/ Teresa Trucchi
TERESA TRUCCHI
Suppa, Trucchi & Henein LLP
3055 India Street
San Diego, CA 92117
Tel. (619) 252-1683
Fax. (619) 297-7330

Attorney for the Plaintiff

s/ Devin A. Wolak
DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 616-0170
Fax. (202) 514-8624

Attorneys for Defendant

January 24, 2008

**CERTIFICATE OF FILING**

I hereby certify that on January 24, 2008, a copy of the foregoing "STIPULATIONS OF FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Devin A. Wolak
DEVIN A. WOLAK