**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| FRANCISCO JAVIER RIVERA AGREDANO, | ) | |
| Plaintiff, | ) | No. 05-608C |
| v. | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO
PLAINTIFF FRANCISCO JAVIER RIVERA AGREDANO'S
MOTION FOR RECONSIDERATION [RULE 52(b); 59(a)(1) and 60(b)]
POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Pursuant to the Court's July 10, 2008 order, the defendant, the United States, submits this response to Plaintiff Francisco Javier Rivera Agredano's Motion For Reconsideration [Rule 52(b); 59(a)(1) and 60(b)] Points And Authorities In Support Thereof (the "motion").

STATEMENT OF THE CASE

Plaintiff Francisco Javier Rivera Agredano's motion seeks reconsideration of the portion of this Court's June 24, 2008 order (the "6/24/2008 Order") denying his request for emotional distress damages in this contract case. 6/24/2008 order at 65-66. Mr. Agredano's motion does not satisfy the accepted standard for granting reconsideration. Accordingly, the Court should deny his motion.

Mr. Agredano's motion is, rather, a substantive response to the Court's ruling upon the emotional distress damage issue and a belated attempt to establish two arguments on the subject. First, he argues that the Court erred, under California tort law, when it implicitly required him to specifically articulate either his specific demand for emotional distress damages, or a methodology that the Court could use to calculate those damages. Second, Mr. Agredano offers

to cure the apparent deficiency in his trial advocacy by offering case of Shipp v. United States, No. SCV 10-0167 DOC (ANx) (C.D. Cal., Sept. 12, 2003), as a benchmark for computing what he contends is a reasonable emotional distress damage award.

Mr. Agredano establishes no manifest error in the Court's decision upon this issue. California tort law does not govern this case, and Mr. Agredano's proffer of the Shipp case invites this Court to commit reversible error. Neither forms a proper basis for reconsidering the Court's judgment in this case, and we respectfully request that Mr. Agredano's motion be denied.

## ARGUMENT

### I. The Court Should Deny Plaintiff's Motion For Reconsideration

#### A. Legal Standard

In the title of his motion, Mr. Agredano indicates that he seeks reconsideration of the Court's June 24, 2008 order pursuant to Rules 52(b), 59(a)(1), and 60(b) of the Rules of the United States Court of Federal Claims ("RCFC"). Mr. Agredano's requests for relief under Rules 52 and 59 are connected; if the Court is persuaded by his Rule 59 motion, Mr. Agredano requests that it amend the order and judgment in this case pursuant to Rule 52. Mr. Agredano's request pursuant to Rule 60(b) does not seek relief from the judgment other than reconsideration, nor does it specify which of the six enumerated bases for relief it invokes. Therefore, it appears that, notwithstanding his citation to three separate rules, Mr. Agredano's motion should be addressed under Rule 59.

Rule 59(a) of the Rules of the Court of Federal Claims ("RCFC") provides that "[a] new trial or rehearing or reconsideration may be granted to all or any of the parties and on all or part

of the issues, for any of the reasons established by the rules of common law or equity applicable as between the private parties in the courts of the United States." To prevail upon a motion for reconsideration, the movant must point to a "manifest error of law or mistake of fact" and must do more than merely reassert "arguments which were previously made and were carefully considered by the court." Henderson County Drainage Dist. No. 3 v. United States, 55 Fed. Cl. 334, 337 (2003) (internal citations omitted). Rule 59(a) is "not intended to give an unhappy litigant an additional chance to sway the court." Pacific Gas & Elec. Co. v. United States, 74 Fed. Cl. 779, 782 (2006) (citing Cane Tenn., Inc. v. United States, 62 Fed. Cl. 703, 705 (2004)). Instead, the moving party therefore must show: (1) that an intervening change in the law has occurred; (2) that evidence previously unavailable is now available; or (3) that the motion is necessary to prevent manifest injustice. Pacific Gas & Elec. Co. v. United States, 74 Fed. Cl. 779, 782 (2006). Here, Mr. Agredano has failed to demonstrate any grounds upon which the Court should reconsider any portion of its judgment.

B. Plaintiff's Motion Is Not Based Upon A Change Of Law, New Evidence, Or Manifest Injustice, And Therefore Should Be Denied

As the grounds for his motion, Mr. Agredano simply "asks for an additional monetary award that is at least equal to (on a per diem basis), or greater than, the emotional distress damages awarded to plaintiff in the case of Michael Ray Shipp v. United States of America." Motion at 1-2. He asserts that granting him additional damages at this late time "would not be prejudicial to defendant USA but would promote substantial justice and result in fair compensation to plaintiff for injuries he sustained (in the event the Court makes the preliminary determination that recovery for emotional distress damages is available in this Court as a matter of law under the facts of this case)." Id. at 2.

As stated above, there are three recognized bases of a proper motion for reconsideration; Mr. Agredano's bare, unexplained request for the Court to reverse itself is not one of them. Additionally, there is nothing to glean from the body of Mr. Agredano's motion that would constitute an argument under one of these three bases.

Mr. Agredano discusses several California state tort-law decisions in his motion, but none is binding upon this Court, and none was issued between the close of trial in this case and the issuance of the 6/24/2008 order. Accordingly, they do not constitute an intervening change in the law.

Mr. Agredano expressly states that the relief he seeks "would be supported by the existing factual record from trial." Motion at 2. Therefore, the second recognized basis for granting reconsideration -- the discovery of previously unavailable evidence -- does not apply.

Finally, Mr. Agredano does not establish that the Court's denial of emotional distress damages constitutes a manifest injustice. "Manifest injustice," as used with respect to Rule 59, means an "injustice that is apparent to the point of being indisputable." Pacific Gas & Elec. Co., 74 Fed. Cl. at 785. The only indisputably apparent aspect of the Court's decision is that the Court felt that the economic damages attributable to Mr. Agredano's past and future medical, psychiatric, and financial injuries adequately and fully compensated him for his emotional distress and pain and suffering. See 6/24/2008 order at 65-66. The basis of the Court's decision upon this issue -- that Mr. Agredano has not supported an additional award of damages -- is not the one the parties expected or requested (we have repeatedly requested a ruling upon the issue of whether emotional distress damages are available in this contract action as a matter of law). However, the Court's choice to resolve the matter upon a factual basis is not manifest injustice.

Mr. Agredano was entitled to have his claim decided by the Court, he was not entitled to a specific ruling, and he certainly was not entitled to a favorable decision.

Mr. Agredano's motion to reconsider, therefore, is nothing more than a transparent attempt to respond to the Court's ruling upon the issue, and thereby relitigate it. This is not a proper basis for the reconsideration, and Mr. Agredano's motion should be denied.

## II. Even Assuming Plaintiff's Arguments Were Properly Before The Court For Consideration Upon The Merits, The Court Should Deny Plaintiff's Renewed Request For Emotional Distress Damages In This Contract Action

As to the merits of the motion, Mr. Agredano posits that, assuming the Court has concluded that he is legally entitled to recover emotional distress damages and California tort law controls the method of determining the quantum of such damages, the Court erred by denying his request upon the basis that he failed to do more than simply request the damages. Motion at 5-7. He then goes on to offer, belatedly, a methodology that the Court may employ to compute an emotional distress damage award. If the Court considers these arguments upon their merits, it should reject them.

### A. Emotional Distress Damages Are Not Available In This Contract Action

As an initial matter, Mr. Agredano is not entitled to recover emotional distress damages in this contract action. This Court has previously held that emotional distress damages lie beyond Congress's grant of jurisdiction, because such damages are inherently tort damages and are speculative as a matter of law when sought in connection with a breach-of-contract claim. Pratt v. United States, 50 Fed. Cl. 469, 482 (2001) ("The court lacks jurisdiction to award plaintiff's prayer for damages for emotional distress and pain and suffering."). See also Flowers v. United States, 80 Fed. Cl. 201, 211 (2008) (stating that the Court lacks jurisdiction over all

tort claims, and also stating, "[a]dditionally, the court lacks jurisdiction to award plaintiff's prayer for damages for emotional distress and pain and suffering") (quoting Pratt); Rodriguez v. United States, 69 Fed. Cl. 487, 494-95 (2006) ("Except in limited circumstances . . . not applicable here, the court cannot award damages for the emotional consequences of a breach of contract because such consequences are speculative as a matter of law.") (quoting Pratt); Betz v. United States, 40 Fed. Cl. 286, 291 (1998) (dismissing claims seeking non-economic damages for pain, suffering, inconvenience, mental anguish, emotional distress, injury to reputation, and humiliation); Bray v. United States, 48 Fed. Cl. 781, 783-84 (2001) (finding no jurisdiction to entertain claims seeking consequential damages incurred as a result of allegedly erroneous withholding of pay). This rule holds true even when the Court retains jurisdiction over a quasi-tort claim; the Court may award traditional economic, contract damages, but it may not bootstrap traditional tort damages to a contract claim without violating its jurisdictional mandate. See Hall v. United States, 69 Fed. Cl. 51, 57-58 (2005) ("Although the court has jurisdiction to adjudicate this claim [which appears to sound in tort] because it is ultimately one arising in contract, the court has no authority to award Plaintiff damages for 'emotional distress and pain and suffering.'") (quoting Pratt).

Even assuming, for argument's sake, that this Court possessed the power to make an award of emotional distress damages, this case does not involve the type of contract that would warrant such an award. Generally, a plaintiff may not recover emotional distress damages in an action for breach of contract. Bohac v. Dep't of Agric., 239 F.3d 1334, 1340 (Fed. Cir. 2001) (applying the traditional contract law prohibition against emotional distress damages to an

employment contract).[1] In cases concerning commercial contracts that, courts consistently uphold the general rule prohibiting the recover of emotional distress damages. See Carpel v.

---

[1] This general rule is widely observed. See, e.g., Stafford v. Puro, 63 F.3d 1436 (7th Cir. 1995) (under Illinois law, punitive and emotional damages cannot be recovered for breach of contract); Karas v. American Family Ins., 33 F.3d 995, 999 (8th Cir. 1994) (finding no indication that South Dakota law varies from the general rule); Dean v. Dean, 821 F.2d 279, 282 (5th Cir. 1987) (citing Texas law, which embraces the general rule prohibiting recovery for emotional damages in an action for breach of contract); Szomjassy v. OHM Corp., 132 F. Supp.2d 1041, 1061 (N.D. Ga. 2001) (upholding the general rule against recovery); Rodriguez v. IBM, 960 F. Supp. 227, 231 (N.D. Cal. 1997) (upholding the general rule that emotional distress and punitive damages are not recoverable on a breach of contract claim); Bonnie & Co. Fashions v. Bankers Trust Co., 945 F. Supp. 693 (S.D.N.Y. 1996) (in New York, it is "generally held that emotional and mental distress is not compensable in a breach of contract action," especially when the breaching party is engaged in private enterprise and there is no allegation of accompanying physical injury); Gilmer v. Walt Disney Co., 915 F. Supp. 1001 (W.D. Ark. 1996) (under Arkansas law, damages for mental anguish are not recoverable on actions of breach of contract); Munday v. Waste Mgmt. of N. Am., 858 F. Supp. 1364, 1379 (D. Md. 1994) (interpreting Maryland law as consistent with the Restatement § 353, which bars recovery unless the breach caused injury or was particularly likely to cause serious emotional distress); Jih v. Long & Foster Real Estate, Inc., 800 F. Supp. 312 (D. Md. 1992) (emotional distress damages are not properly awardable in breach of contract actions unless the exception applies); Hights v. Int'l Harvester Co., 675 F. Supp. 418, 425 (N.D. Ill. 1987) (holding that "absent extraordinary circumstances . . . damages for emotional distress cannot be recovered in a breach-of-contract suit"); Roberson v. Dale, 464 F. Supp. 680, 683 (M.D.N.C. 1979) (holding that if the contract is commercial in nature, emotional distress damages are not recoverable); Stewart Title Guar. Co. v. Aiello, 941 S.W.2d 68, 72 (Tex. 1997) (holding that a breach of contract action will not support mental anguish damages); In re Marriage of Feldner, 40 Cal. App. 4th 617, 627 (Cal. Ct. App. 1995) (holding that "emotional distress damages are, fundamentally, a species of tort damages not recoverable in contract actions"); Pitcherello v. Moray Homes, Ltd., 150 A.D.2d 860 (N.Y. App. Div. 1989) (holding that actions for breach of contract will not support a claim for emotional damages, especially when proof of an accompanying physical injury is lacking); Burns v. Motors Ins. Corp., 530 So. 2d 824, 829 (Ala. Civ. App. 1987) (holding that the insured could not recover emotional distress damages for the insurance company's discontinuance of promised payments); Wehringer v. Standard Sec. Life Ins. Co., 57 N.Y.2d 757 (N.Y. 1982) ("absent an independent duty upon which liability can be placed, there is no right of recovery for mental distress resulting from the breach of a contract-related duty"); B&M Homes v. Hogan, 376 So. 2d 667 (Ala. 1979) (in Alabama, the general rule is that mental anguish is not a recoverable element of damages arising from breach of contract); Shellabarger v. Morris, 115 Mo. App. 566 (Mo. Ct. App. 1905) (without physical injuries, damages for mental anguish arising from breach of contract or negligence are not recoverable); see also, Restatement (Second) of Contracts § 353; Arthur L. Corbin, Corbin on Contracts § 1076 at 1076, at 434 (1964).

Saget Studios, Inc., 326 F. Supp. 1331, 1335 (E.D. Pa. 1971) (denying recovery of emotional distress damages for non-delivered wedding photographs because the contract with the photographer was for a commercial sale of goods); Wise v. Gen. Motors Corp., 588 F. Supp. 1207, 1211 (W.D. Va. 1984) (denying recovery of emotional distress damages for the sale of a defective vehicle because the vehicle did not have any special personal value to the plaintiff); Stewart Title Guar. Co. v. Aiello, 941 S.W.2d 68, 72 (Tex. 1997) (reversing lower court's award of mental anguish damages in for the breach of an insurance policy because the general rule prohibits awards of emotional distress damages); Wellcraft Marine, Div. of Genmar Indus. v. Zarzour, 577 So. 2d 414, 419 (Ala. 1990) (upholding lower court's denial of emotional distress damages in breach-of-warranty case regarding the sale of a boat because the plaintiff did not prove that the contract was of a personal nature).

Emotional damages stand contrary to a longstanding rule of contract law that "[d]amages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contact was made." Restatement (Second) § 351; see also Hadley v. Baxendale, 156 Eng. Rep. 145 (Ex. 1854) (only those damages that are a natural result of the breach, or those that are a consequence of special or unusual circumstances which were in the reasonable contemplation of the parties when making the contract). In accordance with this longstanding rule, courts have held that emotional distress damages are generally not foreseeable or contemplated by parties contracting for the sale of goods. See Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1199-1200 (11th Cir. 2007) (confirming that the general rule assumes that emotional distress is not a foreseeable consequence of breach); Dean, 821 F.2d at 282 (suggesting that emotional damages are to speculative and remote); Myrtle Springs Reverted

Independent School District v. Hogan, 705 S.W.2d 707, 710 (Tex. App. 1985) (stating that emotional distress damages were not foreseeable); Skagway City School Board v. Davis, 543 P.2d 218 (Alaska 1975) (holding that emotional damages could not have been within the contemplation of the parties when they entered into the contract for employment).

As the United States Court of Appeals for the Federal Circuit has observed, courts have permitted the recovery of emotional distress damages in certain limited circumstances. Bohac, 239 F.3d at 1340 (citing the Restatement (Second) of Contracts § 353 examples of contracts involving carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death). The common thread among these cases is that the object of the contracts at issue is an item that has personal or intellectual value for the purchaser. The contracts "relate to matters which concern directly the comfort, happiness, or personal welfare of one of the parties, or the subject matter of which is such as directly to affect or move the affection, self-esteem, or tender feelings of that party. . . ." Kwan v. Mercedes-Benz of N. Am., 23 Cal. App. 4th 174, 188 (Cal. Ct. App. 1994) (quoting Westervelt v. McCullough, 68 Cal.App. 198, 208-209 (1924)); Sullivan v. O'Connor, 363 Mass. 579 (Mass. 1973) (the availability of emotional distress damages in a contract action is entirely dependant upon the subject matter and the background of the contract).[2] Under such

---

[2] See also Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1200 (11th Cir. 2007) ("some involve personal rights that we cherish, dignities we respect, emotions recognized by all as both sacred and personal"); Lamm v. Shingleton, 231 N.C. 10, 55 S.E.2d 810 (N.C. 1949) (contract for the proper handling of one's burial was adequately personal in nature to merit emotional damages); City of Tyler v. Likes, 962 S.W.2d 489, 496 (Tex. 1997) (holding that damages for mental anguish are only available for special relationships including a very limited number of contracts dealing with intensely emotional noncommercial subjects); Stanback, 297 N.C. at 195 (N.C. 1979) (emotional damages not available unless the object of contract is the

(continued...)

contracts where the object of the contract is personal and non-pecuniary, emotional damages are more foreseeable at the time of contracting, and therefore recoverable. See Bohac, 239 F.3d at 1340 (contracts of a personal nature represent a specific category of contracts where the breach is "particularly likely to cause serious emotional damage"); Stanback v. Stanback, 297 N.C. 181, 195 (N.C. 1979) (when contracts directly relate to such matters of dignity, personal rights, mental or emotional concern of the party to whom an obligation is owed, than an emotional disturbance has the highest probability of resulting from a breach of the obligation); Sheely, 505 F.3d 1198 (concluding that a foreseeable consequence of discrimination is that the victim will suffer emotional distress); Allen v. Jones, 104 Cal. App. 3d 207, 211 (Cal. Ct. App. 1980) (discussing how some contracts so affect the vital concerns of the individual, such as where a mortician agrees to prepare a body for burial, which is a contract where it is reasonably foreseeable that breach may cause mental anguish to the decedent's bereaved relations).

Observing this common thread, some modern courts have found emotional distress damages recoverable under contracts that do not fit squarely within the traditional innkeeper/mortician exception. See, e.g., Munday v. Waste Mgmt. of N. Am., 997 F. Supp. 681 (D. Md. 1998) (breach of settlement agreement where employer retaliated against employee who initiated a sex discrimination and sexual harassment); Huskey v. Nat'l Broad. Co., 632 F. Supp. 1282, 1292-93 (N.D. Ill. 1986) (breach of contract to protect the identity of filmed individuals); Sexton v. St. Clair Fed. Sav. Bank, 653 So. 2d 959, 961-62 (Ala. 1995); Doe v. Roe, 289 Ill.

---

[2](...continued)
dignity, mental concern or solicitude, or sensibilities of the party); Crisci v. Sec. Ins. Co. of New Haven, Conn., 426 P.2d 173 (Cal. 1967) (emotional distress damages available only for contracts directly concerning comfort, happiness or personal esteem of one of the parties).

App. 3d 116, 224 (1997) (breach of lawyer's fiduciary duty to his client); McManus v. Galaxy Carpet Mills, 433 So.2d 854 (La. Ct. App.1983) (breach of contract to carpet a house, where "intellectual enjoyment" was the principal objective); Sullivan, 296 N.E.2d at 188-89 (breach of contract to aesthetically improve nose through rhinoplasty); Stewart, 84 N.W.2d at 825 (breach of physician's promise to perform a Ceasarean section); Massachusetts Mut. Life Ins., 409 Mich. 401, 416 (Mich. 1980) (holding that a contract to perform a Caesarean section is not a commercial contract in which pecuniary interests are most important).

These examples of cases awarding emotional distress contract damages are few, and the general rule still presents a high barrier to the recovery of such damages in contracts for goods -- especially vehicles. For example, in Kwan v. Mercedes-Benz of N. Am., 23 Cal. App. 4th 174 (Cal. Ct. App. 1994), the court held that a contract for sale of an automobile is not connected to the buyer's mental or emotional well-being. Id. at 188. "[P]ersonal as the choice of a car may be, the central reason for buying one is usually transportation." Id. See also, Alston v. Fleetwood Motor Homes of Ind., Inc., 480 F.3d 695 (5th Cir. 2007) (under Louisiana law, mental anguish damages are recoverable for a breach of contract only where the object of the contract is an item that satisfies a nonpecuniary interest, and a contract for an automobile presumptively does not satisfy this condition, unless it is an "antique or a specially-designed custom-built vehicle"); Wellcraft Marine, Div. of Genmar Industries v. Zarzour, 577 So. 2d 414, 419 (Ala. 1990) (contract for the sale of a motorboat is not one that is so related to matters of mental concern or solicitude as to warrant the availability of emotional distress damages).

At trial, the evidence demonstrated that Messrs. Rivera and Calderon purchased the 1987 Nissan Pathfinder to use it in connection with their printing business. The contract at issue here

is for the sale of a vehicle, and that vehicle was bought for commercial purposes. As a matter of law, this is not the type of contract that would allow Mr. Rivera to recover damages for emotional distress.

B. California Law Does Not Apply To This Case

Mr. Agredano is also incorrect to assume that California tort law governs this case. It does not. See Bixby Ranch Co. v. United States, 35 Fed. Cl. 674, 678 (1996) ("Contracts that involve the federal government or its agencies are governed by federal law rather than by the law of the particular states in which the contracts are executed or performed."); United States v. Allegheny County, PA, 322 U .S. 174, 183 (1944) (stating that by Federal common law, not state common law, controls the field of federal government contracts). Therefore, this Court is not bound to follow any of the cases that Mr. Agredano cites in support of his argument.[3]

That aside, we note that the California case law Mr. Agredano discusses in his motion appears to be consistent with the majority rule for determining the quantum of emotional distress damages. Specifically, many jurisdictions appear to hold that, after entitlement has been established, the determination of the quantum of emotional distress damages is committed to the discretion of the jury, whose decision is to be guided by its members' collective life experience rather than any specific equation or computation methodology, and their decision is reviewable

[3] Indeed, there is no mandatory authority for this Court to follow when determining either entitlement or quantum of emotional distress damages. This is the direct result of the extremely low frequency of contracts that specifically contemplate the contracting parties' emotional solicitude so as to entitle a non-breaching party to an award of emotional distress damages. This leaves the Court free to write upon a blank slate and, as we have urged in the past and argue above, the correct approach in this case is to deny Mr. Agredano's claim as a matter of law because emotional distress damages are not available in this breach of contract action.

by the trial and appellate courts only for reasonableness.[4] While we do not agree that this Court should adopt this rule (indeed, we contend that the Court should have ruled upon the legal issue and should never approach anything that comes close to determining quantum), it does highlight one additional complication with the Court's suggestion that emotional distress damages are potentially available in this contract action. Specifically, the rule that the quantum decision rests first with the jury presents a serious impediment to an institution like this one -- which cannot empanel a jury -- to making an award of emotional distress damages. See Beagle v. Vasold, 65 Cal. 2d 166, 179-80 (Cal. 1966) (an award of emotional distress damages "must meet the test of

---

[4] See, e.g., Okraynets v. Metropolitan Transp. Authority, --- F. Supp. 2d ---, 2008 WL 2190960, at *12 (S.D.N.Y. 2008) (diversity case) (under New York law, "a specific or definitive measure of damages for pain and suffering is 'impossible'"); Cariglia v. Hertz Equipment Rental Corp., 343 F. Supp. 2d 50, 56 (D. Mass. 2004) (diversity action, Massachusetts law) ("There is, of course, no mathematical formula by which to measure damages for emotional distress"); Milhone v. Allstate Ins. Co., 289 F. Supp. 2d 1089, 1100 n.7 (D. Ariz. 2003) (diversity action, Arizona law) ("In short, evaluating personal injury claims . . . is far from an exact science. Oftentimes it is no more precise or predictable than throwing darts at a board."); Weinstein v. Islamic Republic of Iran, 184 F. Supp. 2d 13, 22-23 (D.D.C. 2002) (wrongful death claim pursuant to the Foreign Sovereign Immunities Act) (determining emotional distress damages is inherently difficult and subjective, but "required once liability has been determined"); Lindsay v. American General Life & Accident Ins. Co., 133 F. Supp. 2d 1271, 1278 (M.D. Ala. 2001) (diversity action, Alabama law) (stating that emotional damages must be awarded when liability is proven, the quantum of such damages is committed to the discretion of the jury, and the jury's determination may not be disturbed absent a showing that "the amount is so excessive or inadequate as to indicate prejudice, passion, partiality or corruption"); DeCarlo v. United States, 2002 WL 31499281, at *34 (M.D. Pa. 2002) (unpublished) (FTCA claim, Pennsylvania law) (the "law requires an award of noneconomic damages to include compensation for a plaintiff's physical pain and suffering, mental anguish, inconvenience, and loss of enjoyment of life including reduction in life expectancy. . . . Beyond that requirement, the law provides no significant guidance to assist us in determining an appropriate award for [plaintiff's] non-economic damages."); Garza v. United States, 2007 WL 776682, at *9 (S.D. Tex. 2002) (unpublished) (FTCA claim by Federal prisoner; Texas law) ("Physical pain and suffering are inherently subjective damages that are difficult to quantify. . . . Accordingly, a factfinder is given wide discretion in determining the amount of an award compensating an injured party for pain and suffering.").

reasonableness. . . . [i]f the jury's award does not meet this test, the trial court has the duty to reduce it . . . ."). To accommodate Mr. Agredano's request, the Court would have to assume the role of the jury, somehow invoke its collective wisdom gleaned from life experience, make the initial determination of the award, and then review its own decision to ensure that the award is reasonable. Such a process eliminates two of the checks inherent in the traditional tort system -- the collective wisdom of a full jury informing the initial decision, and the limited check for reasonableness of the trial judge.

Additionally, the fact that all the cases cited by Mr. Agredano are tort cases adds another facet to this problem. This Court does not decide tort cases and does not even observe juries making awards in tort cases, much less determine those awards on its own. The unavailability of a jury in this Court militates against even beginning to engage in the process of determining the proper quantum of emotional distress damages -- a traditionally tort measure of damages -- and perhaps this explains the Court's reluctance to compute the requested damages "from scratch." 6/24/2008 order at 66.

C. The Shipp Case Is Not Comparable To This Case

In the second half of his motion, Mr. Agredano offers to remedy the deficiency in his trial advocacy identified by the Court in its June 24, 2008 final order. Specifically, he asks that the Court take judicial notice of the decision in Shipp v. United States, No. SCV 10-0167 DOC (ANx) (C.D. Cal., Sept. 12, 2003) (Exhibit A to motion), and use it as a benchmark for computing the appropriate quantum of emotional distress damages Mr. Agredano claims he is due.

The Court's statement that Mr. Agredano has not supported his demand for emotional

distress damages was not an invitation for him to provide the missing support after the close of trial. Mr. Agredano's argument in this regard is an attempt to relitigate the emotional distress issue. The Shipp decision was entered in 2003, and Mr. Agredano was fully capable of including the argument he makes here in his pre- and post-trial briefing. That opportunity has passed, and a motion for reconsideration is not an appropriate vehicle for a party to correct its previous errors and omissions from its advocacy.

Even if the Court is persuaded to consider Mr. Agredano's Shipp argument, we respectfully suggest that it be rejected. The Shipp case -- and the damages awarded in it -- are highly distinguishable from this case.

The facts of the Shipp case are not similar to the present case. Both cases involve wrongful arrests and incarceration for a drug-related crime, but the similarities end there. Mr. Shipp brought a tort claim against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1); Mr. Agredano's FTCA claim was dismissed, and he is pursuing a contract claim against the United States. Because Mr. Shipp brought a tort claim, availability of emotional distress damages, as a matter of law, was never seriously in question; Mr. Agredano's entitlement to such damages in connection with his contract claim has been one of the subjects raised in virtually every brief written by both parties in this case.

There are also critical differences in the allocation of damages between the two cases. In this case, Mr. Rivera has been awarded damages for his past and future medical and psychiatric costs, his physical injuries, and his financial losses. The Court has stated that such an award fully compensates Mr. Agredano for all of his economic and emotional damages. 6/24/2008 order at 65-66. Specifically, the award of past and future medical and psychiatric costs are

intended to provide Mr. Agredano with the means to not only pay his healthcare physicians for past diagnosis and treatment, but also to partake in future treatment aimed at full rehabilitation. Awarding anything more would be a windfall.

Mr. Shipp's economic damages, on the other hand, were limited to lost wages, lost bonus, lost opportunity to participate in the 401(k) program, and lost opportunities at a promotion. Ex. A to motion at 18. This number did not include a component attributable to Mr. Shipp's psychological and emotional injuries. To address these injuries, the Shipp court made an additional award of $550,000 in emotional distress damages. Id. (stating the basis for such an award as: "Shipp suffered physical injuries and serious emotional distress during his ordeal in jail, and continues to suffer serious emotional distress as a result of the arrest and imprisonment. Further, the Court finds that Shipp will continue to suffer damages throughout his life as a result of having to report on employment or other such applications that he was arrested for a felony.").

Also, contrary to the implication contained in Mr. Agredano's motion, the Shipp court did not arrive at the $550,000 emotional distress figure by determining a daily rate of compensation and multiplying it by the number of days Mr. Shipp spent in jail. Rather, the Shipp court made a lump-sum award without stating the process by which it computed that award. It is readily apparent, though, that the award is twice the amount of economic damages awarded in the case.

Finally, a closer examination of Mr. Agredano's suggested per-diem methodology reveals that a strict application will result in an unreasonably excessive emotional damages award. See Beagle v. Vasold, 65 Cal. 2d 166, 179-180 (Cal. 1966) (acknowledging that the per-diem calculation can be misleading by disguising an unreasonably enormous damage award by

stating in smaller an smaller increments, and stating that defense counsel can avoid such deception by highlighting it to the jury).[5] Applying Mr. Agredano's math -- multiplying the daily emotional distress damage award from the Shipp case ($13,095) by the days of Mr. Agredano's incarceration (351) -- results in an emotional distress award of $4,596,345. This amount exceeds the total economic damages awarded in this case by a factor of 9. Compared to the Shipp case -- where the emotional distress damages exceeded economic damages by a factor of 2 -- Mr. Agredano's demand is unreasonable.[6]

Mr. Agredano's $4.6 million demand is also excessive in absolute dollar terms. The plaintiff in the Beagle case, relied upon by Mr. Agredano, was a carpenter who suffered injuries as the result of an automobile accident. Beagle, 65 Cal. 2d at 169. The general, or emotional distress/pain-and-suffering, damages he sought totaled $61,025.18. Id. Because the Beagle case was decided in 1966, the plaintiff's $61,025.18 demand is the equivalent of a $412,136.57 demand in 2008 dollars. see http://data.bls.gov/cgi-bin/cpicalc.pl (United States Department of

---

[5] This case, relied upon by Mr. Agredano as the basis of his argument that a per-diem calculation is permissible, actually held that plaintiff's trial counsel is permitted to argue to the jury for a per diem calculation of emotional distress damages; it did not hold that such methodology was required, or even encouraged. 65 Cal. 2d at 170 ("The only issue raised on this appeal by any of the parties, including amici curiae, is whether the trial court erred in prohibiting plaintiff's counsel from stating in argument to the jury the amount of general damages claimed by the plaintiff, either in terms of a total sum or of a sum for a time segment. We conclude it was error to restrict counsel's arguments in that regard.").

[6] Perhaps this is why Mr. Agredano refrains from stating his total demand anywhere in his motion. Additionally, for a truer comparison to the Shipp 2:1 ratio, we should eliminate all economic damages awarded to Mr. Agredano not attributable to his lost income, etc. Mr. Agredano received $48,000 in lost income, $2,600 for the value of the vehicle, and $1,254 for his family's expenses incurred during their visits to him while in jail. 6/24/2008 order at 66. The total of these amounts is $51,854. $4,596,345:$51,854 reduces to 88.6:1 -- an even more unreasonable ratio when considered in light of the Shipp award.

Labor, Bureau of Labor Statistics inflation calculator). Our research suggests that an emotional distress award in this range would be at the high end of "reasonable" awards, which seem to cluster in the low hundreds of thousands of dollars range. See, e.g., Rangolan v. County of Nassau, 370 F.3d 239, 245-46 (2d Cir. 2004) (affirming $300,000 emotional distress damage award to inmate plaintiff who, while in jail, sustained a severe brain injury and a depressed fracture of the skull requiring emergency brain surgery, and placed him in a coma for six days, and has left him with recurrent seizures and a personality disorder); Bernard v. Lovett, 2007 WL 2570238, at *3 (N.J. Super. A.D. 2007) (unpublished) (limiting emotional distress damage award to $200 per day, where wrongfully imprisoned plaintiff suffered depression, stress, and anxiety); Evans v. Port Auth. of NY & NJ, 273 F.3d 346, 355-56 (3d Cir. 2001) (reducing emotional distress damage award in an employment discrimination case from $1,000,000 to $375,000); Johnson v. Clark, 484 F. Supp. 2d 1242, 1257-58 (M.D. Fla. 2007) (collecting cases concerning the remittur of excessive emotional distress damages with respect to libel and slander claims). Of course, Mr. Agredano's $4.6 million demand far exceeds this range of reasonableness.

Additionally, the Beagle court noted two instances of "excessive damages" that were awarded as a result of a strict application of the per-diem methodology. See 65 Cal. 2d at 178-79 ($248,439.00 in 1966 dollars, $1,677,230.48 in 2008 dollars; $187,903.75 in 1966 dollars, $1,269,017.25 in 2008 dollars). Again, Mr. Agredano's $4.6 million demand exceeds this "excessive" range.

As the Court observed in its June 24, 2008 order, Mr. Agredano's economic damage award already accounts for his past and future pain, suffering, and emotional distress. Therefore, granting Mr. Agredano's request and awarding him an additional $4.6 million for his emotional

distress would not only be unreasonably excessive, it would essentially give Mr. Agredano a double recovery for his injuries. This is something the Court should not do.

CONCLUSION

For these reasons, we respectfully request that the Court deny Mr. Agredano's motion.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

s/ Devin A. Wolak
DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, DC 20530
Tel. (202) 616-0170
Fax. (202) 305-7644

July 18, 2008 Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on July 18, 2008, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF FRANCISCO JAVIER RIVERA AGREDANO'S MOTION FOR RECONSIDERATION [RULE 52(b); 59(a)(1) and 60(b)] POINTS AND AUTHORITIES IN SUPPORT THEREOF" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Devin A. Wolak