than our officers. Can they succeed 100% of the time? Of course not. But they do a great job with what they have and what they are up against. It is so easy to second-guess their efforts from the safe, static environment of law offices miles from the border, but it is not fair and it is not justified.

It would also easy to say now that we should not have sold the car. But if you want to talk about responsibility, then let's talk about your clients. They were grown men engaged in an arms-length commercial transaction. Nobody put a gun to their heads and forced them to take advantage of the tremendous deals the auctions typically offer. With those benefits, they also assumed the risks. Since we cannot find every ounce of drugs, we would never warrant that we found 100%. To the contrary, we expressly let every buyer -- including your clients -- know they must assume they are buying the cars just as we got them. Any responsible adult who knowingly buys a Customs-seized vehicle "as is-where is" understands that risk. If he has doubts, he doesn't have to buy it. But if he elects to accept the risk, then he must thoroughly inspect it both before and after the sale. We deal with thousands of cars. The buyer deals with only one. If the drugs really were in the car when your clients bought it, then both they and our officers missed them. But our focus should be on the thugs who hid the drugs there, not on the decent, hard-working men and women defending our borders -- and certainly not on winning millions of dollars from the government.

Remember also that this discussion assumes your clients are indeed innocent. We can never know that for certain. Do you doubt for an instant that drug smugglers buy auctioned vehicles in order to obtain a built-in defense, and perhaps even grounds to sue the United States for millions of dollars? And is there any question that the cartels follow these criminal and civil cases?

As all this shows, we have strong public policy reasons for vigorously defending these cases, including asserting all the defenses Congress in its wisdom places in our hands, which you call "loopholes." Last time I checked, nobody elected me to Congress. I am certainly not going to usurp the legislative function or shirk my professional responsibilities by ignoring valid defenses. That said, if your clients truly are the good people you claim they are, I have some latitude to settle for an amount that will help them move on with their lives -- particularly with the lower cost of living in Mexico. But I must say that your demand for a million each (or even hundreds of thousands) casts them in a harsh light. Given such stratospheric numbers, I am presently more inclined to prepare for trial than waste your time (or mine) with a counteroffer.

By the way, my hat will be off to you if you can win attorneys' fees. To my knowledge, that would represent the first time anyone ever won such fees in a straight FTCA case.

Very truly yours,

CAROL C. LAM
United States Attorney

TIMOTHY C. STUTLER
Assistant U.S. Attorney

cc: Vivian Shultz, Esq. (via fax)
William Rathbone, Esq. (via fax)
Vince Ramos, Esq. (via fax)